Alfredo AVILES, Plaintiff–Appellant,

v.

**CORNELL FORGE COMPANY,**
Defendant–Appellee.

No. 98–1563.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1998.

Decided June 29, 1999.

Rehearing Denied July 27, 1999.

Aaron B. Maduff (argued), Maduff & Maduff, Chicago, IL, for Plaintiff–Appellant.

Renee LeGrand Koehler (argued), Wessels & Pautsch, Chicago, IL, for Defendant–Appellee.

Before WOOD, JR., RIPPLE· and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Alfredo Aviles filed suit against his employer, Cornell Forge Company, claiming hostile work environment based on national origin, and retaliation. The district court granted summary judgment in favor of Cornell Forge. We affirm in part, reverse in part, and remand.

## I.

Alfredo Aviles, who ˙is of Mexican descent, held a variety of positions at Cornell Forge between 1987 and 1994. Before March of 1994, he worked primarily in the shipping and receiving departments, and during that time he was promoted and received good performance ratings. In late March, 1994, he was promoted to the position of shipping clerk in the shipping department. In that job, he alleged his supervisors subjected him to discrimination and harassment based on his national origin in the form of insults, slurs, deprivation of duties and demotion.

On May 16, 1994, Aviles filed his first charge with the EEOC, and he claims that his supervisors' harassment escalated after that point, leading him to file an amended charge on May 27, 1994. He filed a third charge on December 8, 1994. In his May 16 charge, Aviles alleged that Cornell Forge discriminated against him on the basis of national origin when it demoted him from shipping clerk to blaster and filled his·shipping clerk position with two less senior, less· experienced non-Hispanic employees. On May 27, 1994, Aviles filed another charge in which he alleged that Cornell Forge suspended him after filing the May 16, 1994 charge, and that he believed this suspension was in retaliation for filing the first charge. He alleged that his employer told him he was being suspended for failure to perform job duties and for leaving the building without permission, neither of which was true. On December 8, 1994, Aviles filed his third and final charge, alleging that when he returned from his suspension, Cornell Forge refused, without explanation, to assign him overtime. Aviles attributed this action to retaliation for filing his original charge, and contended that all other employees had been assigned overtime.

Aviles' complaint contains additional, more detailed allegations, and the differences between the charges and the complaint will become significant in our analysis, so we will review the complaint here. In the preface of his complaint, Aviles alleged that two supervisors in the shipping department subjected him to harassment based on national origin, including national origin-based slurs, jokes, offensive comments and insults. He also alleged that he was treated differently and deprived of his responsibilities because of his national origin. In particular, he claimed one of the supervisors demoted him from shipping clerk to blaster, a less desirable position. He asserted that his employer did nothing to alleviate the situation when he complained. In Count I, Aviles asserted that the conduct described above violated Title VII of the Civil Rights Act of 1964, because it was harassment based on national origin. In Count II, Aviles alleged retaliation, maintaining that shortly after he filed his first EEOC charge, his employer suspended him for five days, and then falsely told local police that Aviles had threatened his supervisor with a gun. The police, believing this false charge, physically and emotionally harmed Aviles, according to the complaint. His employer engaged in further retaliation, Aviles alleged, when he returned to work after the suspension and was denied overtime when all other employees on his shift were allowed to take it.

In an oral ruling, the district court granted summary judgment in favor of Cornell Forge. The district court characterized the complaint as containing five distinct claims: (1) national origin discrimination, as evidenced by the demotion; (2) national origin harassment, in that Cornell Forge subjected Aviles to slurs, jokes, offensive comments, insults and disparate treatment; (3) retaliation, as evidenced by Aviles' suspension; (4) retaliation by denial of overtime; and (5) retaliation by misleading the police, and causing them to injure Aviles. The court noted that Aviles voluntarily withdrew his claim of national origin

discrimination based on his demotion, and thus granted summary judgment in favor of Cornell Forge on that claim.

The court granted judgment against Aviles on the second claim, national origin harassment, because Aviles had made no such claim in his EEOC charges, as required by law. On the retaliation-by-suspension claim, the court granted judgment for Cornell Forge because the company suspended Aviles before it knew he had filed the initial EEOC charge, and thus the action could not have been retaliatory. The court engaged in a burden shifting analysis of Aviles' claim of retaliation-by-demotion, and found that, although he made out a prima facie case, Cornell Forge responded with a legitimate, non-discriminatory reason for its actions, shifting the burden back to Aviles. Because Aviles produced insufficient evidence that Cornell Forge's reason was pretextual, the court granted judgment on that claim as well. Finally, the court entered judgment on the claim that Cornell Forge retaliated by prompting the police to injure Aviles because the employer's action was not related to Aviles' employment. Aviles timely appealed.

## II.

Aviles first posits that the court misread his deposition testimony when it found that Cornell Forge was not aware of the EEOC charge until after the suspension, and thus summary judgment was inappropriate on that claim. Second, Aviles claims that Cornell Forge's excuse for denying him overtime was pretextual, precluding summary judgment on that claim as well. Finally, he argues that the court inappropriately entered judgment *sua sponte* on the retaliation claim relating to the alleged police action when it found that Cornell Forge's action was not work-related.

### A.

In a confusing exchange during his deposition, Aviles testified about telling Cor-

nell Forge personnel about the filing of an EEOC charge:

Q: Did you tell anybody that you were going to be filing a charge of discrimination?

A: Yes, I did.

Q: Who did you tell?

A: Not on May 16, but I did mention to Tom LeFaive that I threw a charge with the EEOC.

Q: When did you tell Tom LeFaive that?

A: That was May 26, 1994. And Mike Chlopek was there, too.

Q: Is that the first time you told anybody at Cornell Forge that you filed a charge of discrimination?

A: Not really, because my co-workers there, they knew it too.

Q: Okay. Well, I'm not talking about your coworkers right now, but any other management person?

A: Yes, management. Andy knew about it. Andy, Tom LeFaive, Mike Chlopek and Pat Kennelly knew that I had thrown a charge with the EEOC.

Q: How did they know?

A: I told them myself.

Q: So you told then all, though, on May 26th?

A: On May 26th when I got suspended.

Q: So you told them after you were already suspended?

A: Yes, after.

. . . . .

Q: That's the first time you ever told any member of management or any supervisor that you had filed a charge of discrimination against Cornell Forge Company?

A: Yes.

Deposition of Alfredo Aviles, May 13, 1997, Record at 28, pp. 152–53. The defendant took this exchange to mean that Aviles told no one about his EEOC charge until after they suspended him, and therefore the suspension could not have been in retaliation for filing the charge. Aviles filed an affidavit in response to this argument in which he explained that he *threatened* to file a charge before May 16, 1994. Specifically, he averred that he told his supervisor Pat Kennelly before May 16 that he had talked to a lawyer and was going to file a charge of discrimination. The district court found that this affidavit contradicted the earlier deposition testimony, and held that a self-serving affidavit that contradicted earlier deposition testimony could not be used to create an issue of fact. Aviles argues on appeal that the affidavit does not contradict his earlier testimony because at the deposition, he was answering questions about when he told Cornell Forge that he had already filed a charge; his claim for retaliation was based on the suspension that occurred after he threatened to file a charge, not after he actually filed it.

Cornell Forge answers that Aviles never claimed in any EEOC charge or in his complaint that the protected activity was a threat to file a charge, rather than the filing of the charge. In his EEOC charge, Aviles asserted that he was suspended after filing his May 16, 1994 charge of discrimination. In his complaint, Aviles alleged that he was suspended shortly after filing the May 16, 1994 charge. He never claimed that the suspension was in retaliation for *threatening* to file a charge. Our review of the record shows that Cornell Forge is factually correct. Aviles did not claim that the suspension was in retaliation for *threatening* to file a charge until he was responding to Cornell Forge's motion for summary judgment. But both sides, it seems to us, are missing the point.

 First, the district court was incorrect that Aviles' affidavit contradicted his earlier testimony. In answer to the first deposition question, Aviles indicated that he told someone at Cornell Forge that he was *going to be filing* a charge of discrimination, indicating that he told Cornell Forge before he actually filed a

charge. But in response to the second question, Aviles and the questioner arguably switched gears and began talking about what Aviles told his supervisors after filing the charge. At best, this exchange is ambiguous, and on summary judgment, the ambiguities should be construed in Aviles' favor. When we construe this exchange in Aviles' favor, we conclude that he threatened to file a charge before he actually filed. The remaining testimony applied to what he said after filing the charge and thus the affidavit does not contradict the deposition testimony.

■ Second, Cornell Forge is incorrect in arguing that Aviles was obliged to state in his charge and his complaint that the protected activity was a threat to file a charge rather than filing the charge itself. In making a claim for retaliation, the plaintiff need not bring a separate EEOC charge at all under the general rule we announced in *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir.1989). Here, although not required to do so, Aviles did amend his original charge to include a claim for retaliation. There is nothing inconsistent about the retaliation claim he made in his EEOC charge and the theory he claims in opposition to summary judgment. When he testified at his deposition that he told someone at Cornell Forge he was going to be filing a charge of discrimination, the questioner did not further explore that answer. That failure cannot be held against Aviles.

■ That leads us to the final analysis of this issue. The only evidence Aviles has presented in support of his claim that he was suspended in retaliation for threatening to file a charge is his affidavit and his statement in the deposition that he told someone he was going to be filing a charge of discrimination. In the affidavit, Aviles states, "I then spoke to my supervisor, Pat

Kennelly, and told him that I had spoken to an attorney and was going to file a charge of discrimination with the EEOC which I later did in fact do on May 16, 1994." *See* Record at 25, Exhibit C, p. 1. In both the deposition and the affidavit, there is no foundation for the time this alleged threat was made.[1] Aviles began working for the defendant in 1987, and the charge was filed in 1994. Without some showing of temporal proximity, Aviles' threat to file the charge cannot be said to be reasonably related to his suspension on May 26, 1994. On this record, the threat could have been made as many as seven years before the suspension. That is not enough to create a genuine issue of material fact on the issue of retaliation. We may affirm summary judgment on any basis we find in the record, and we affirm it on that ground. *See McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir.1997).

### B.

■ Aviles next claims that Cornell Forge's excuse for denying him overtime was pretextual, precluding summary judgment on that claim as well. Cornell Forge argues that it denied Aviles overtime pay because it was trying to save money at a time when the plant was exceptionally busy. Rather than pay overtime to the first shift, Cornell Forge transferred Aviles to the second shift to complete work the first shift could not finish. Cornell Forge had a policy of not approving overtime for second shift workers in order to save money. The company explained that it transferred Aviles to the second shift because he was the best "blaster" at the plant, and could perform the work unsupervised, obviating the need for a second shift supervisor and saving the plant even more money. Aviles urges us to find this reasoning pretextual, arguing that it defies

---

1. Aviles avers that he spoke to an attorney before filing his first charge with the EEOC, and that after speaking to his attorney, he "then spoke" to his supervisor Pat Kennelly and told him he was going to file the charge

that he later filed on May 16, 1994. Because he fails to identify a time frame for the conversation with his attorney, the phrase "then spoke" adds nothing to the foundation for this remark.

common sense that a company would place its best worker in a less desirable position under these circumstances. Aviles maintains that this excuse is "so fishy and suspicious" that he should be able to withstand summary judgment on the ground that it is pretextual. *See Russell v. Acme–Evans Co.*, 51 F.3d 64, 70 (7th Cir.1995).

 Cornell Forge's explanation is not so fishy and suspicious that we will assume it is pretext. Trying to save money is a legitimate, nondiscriminatory reason to transfer Aviles to the second shift, and refuse to approve overtime for him. Cornell Forge may have underestimated how much they would anger their best blaster by placing him in this position, but a bad decision is not necessarily a discriminatory decision. *See Debs v. Northeastern Illinois University*, 153 F.3d 390, 396 (7th Cir.1998) (a foolish, trivial or even baseless decision, if honestly believed by the employer, is not pretextual). We do not sit as a super-personnel department, second-guessing the business decisions of employers. *Id.* Without more, Aviles cannot survive summary judgment on his claim that Cornell Forge retaliated against him by refusing to approve overtime for him.

### C.

 We come to Aviles' final argument, that the court erred in entering judgment *sua sponte* on the false police report claim. In that claim, Aviles alleged that Cornell Forge retaliated against him by falsely telling the police that he had a gun and had threatened to shoot his supervisor on May 26, 1994. Construing the facts in Aviles' favor for the purposes of summary judgment, the police then injured him so severely that he was unable to work for six weeks. Before we address the merits of this claim, we must address a procedural issue. Although the defendant purportedly moved for summary judgment on the entire complaint, it failed to offer any argument on this particular retaliation claim in its opening brief. In fact, the first time Cornell Forge addressed this claim

was in its reply brief on summary judgment. In the reply, Cornell Forge urged the district court to grant summary judgment on the false police report claim because Aviles had failed to cite any facts in support of the claim, and because the police harassment of Aviles was not an adverse employment action. In response, Aviles moved to strike that part of the reply brief addressing this claim. Aviles attached to this motion a number of exhibits that supported his claim factually.

Without ruling on the motion to strike, the district court noted that it could enter summary judgment *sua sponte* where the losing side had notice and an opportunity to come forward with all its evidence. The court found that Aviles had notice from the original motion that Cornell Forge was seeking judgment on the entire complaint. Moreover, the court noted, Cornell Forge addressed this claim in its reply, and Aviles had an opportunity to respond in his motion to strike. The court found that "[t]he motion ostensibly contained plaintiff's full argument on this claim, supported by eight exhibits." *See* Transcript of Proceedings Before the Honorable Harry D. Leinenweber, January 16, 1998, at 9–10. Therefore, the court decided that in its discretion, it could rule on the claim.

 "While not encouraged, a district court can enter summary judgment *sua sponte*, or on its own motion, under certain limited circumstances." *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir.1999). We have repeatedly stated that granting summary judgment *sua sponte* warrants special caution. *Id.*; *Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir.1987). Generally, a court lacks the power to take this action unless the party against whom summary judgment was entered had notice that the court was considering entering judgment, and a fair opportunity to present evidence in opposition to the entry of summary judgment. *Simpson*, 171 F.3d at 549.

We cannot say that Aviles was afforded notice and a fair opportunity to present arguments and evidence in response. Cornell Forge gave its first indication that the false police report claim was at issue in its reply brief in support of summary judgment. Aviles had very few options at that point: he could have requested an opportunity to file a surreply, or he could have filed a motion to strike. He chose the latter option. Although he attached exhibits to the motion to strike, it was inappropriate for the court to consider that document Aviles' "full argument on the claim." The motion contained no argument at all on the merits of the claim, but rather urged the court to strike those parts of the reply brief that raised this issue for the first time. We add that the exhibits, which included police reports, affidavits, and excerpts of deposition transcripts, created a genuine issue of material fact as to whether Cornell Forge supervisors falsely reported to the police that Aviles was armed and laying in wait outside the plant after threatening to harm his supervisor.

The district court did not address whether the exhibits created a genuine issue of material fact, however, because it granted summary judgment on a purely legal basis.[2] In reviewing the district court's reasoning on this issue, we first note that the court would have benefitted from full briefing on this issue, as this issue is more complex than it initially appears. The court found that Aviles' claim was barred as a matter of law because the police action had no adverse effect on Aviles' employment conditions. The court cited *McKenzie v. Illinois Department of Transp.*, 92 F.3d 473, 485–86 (7th Cir. 1996), in support of its holding that an essential element of any retaliation claim is that the complained of action be related to the plaintiff's employment. What we actually said in *McKenzie* was that recent cases had suggested that retaliatory activity in the pre-termination context need **not** be job related. 92 F.3d at 486. *See also Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 892 (7th Cir.1996); *McDonnell v. Cisneros*, 84 F.3d 256, 258–59 (7th Cir. 1996).

In *Veprinsky*, we stated that a "current employee can sue for retaliatory acts that, but for the fact that they are committed by his employer, are unrelated to employment as such." 87 F.3d at 892 (collecting cases). We noted that even in the post-termination context, a threat of violence, for example, "may be every bit as effective in dissuading a former employee from pursuing a pending Title VII claim as blackballing her among prospective employers." *Id.* Similarly, we noted in *McDonnell* that the provision in Title VII regarding retaliation appears to be broader than the provision against employment discrimination. 84 F.3d at 258–59. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment." *See* 42 U.S.C. § 2000e–2(a)(1) and (2). But no similar limitation appears in Title VII's retaliation provision, section 2000e–(3)(a), which prohibits employers from "discriminat[ing] against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter." We commented in *McDonnell* that this "provision regarding retaliation may intentionally be broader, since it is obvious that effective retaliation against employment discrimination need not take the form of a job action. Shooting a person for filing a complaint of discrimination would be an effective method of retaliation," although the victim would have other, more powerful remedies than a suit under Title VII. 84 F.3d at 258–59.

**2.** Although we have found that the district court was premature in granting summary judgment *sua sponte* under these circumstances, we decline to remand for consideration of a fully briefed summary judgment motion. We are conducting *de novo* review, and the court ruled on a purely legal issue. In the interests of judicial economy, we will address that legal issue now.

Although it is true that Aviles may have some state law cause of action against his employer for making a false police report against him, the availability of a state law claim does not eliminate Aviles' Title VII retaliation claim. *McDonnell* and *Veprinsky* make clear that the language of the Title VII retaliation provision is broad enough to contemplate circumstances where employers might take actions that are not ostensibly employment related against a current employee in retaliation for that employee asserting his Title VII rights. Aviles has presented enough evidence that Cornell Forge took such an action only moments after Aviles informed his supervisors that he had filed a charge of discrimination ten days earlier. Although not quite as dramatic as the example we gave in *McDonnell* of the employer shooting the employee, a false report to the police that Aviles was armed and laying in wait outside the plant could certainly be construed as a retaliatory action meant to discourage Aviles from pursuing his claim.[3] We therefore reverse and remand for trial on the claim that Cornell Forge retaliated against Aviles by making the false police report. As noted above, we affirm summary judgment on the other claims at issue.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

**3.** Cornell Forge also argues that Aviles failed to raise this claim in any charge before the EEOC. As we discussed earlier, a plaintiff need not bring a separate EEOC charge in making a claim for retaliation. *See Malhotra*, 885 F.2d at 1312.