Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 23, 2003          Decided April 22, 2003

No. 02-5009

LLOYD SHAFFER,
APPELLANT

v.

ANN M. VENEMAN, SECRETARY,
UNITED STATES DEPARTMENT OF AGRICULTURE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(cv01729)

———

*Mona Lyons* argued the cause and filed the briefs for appellant.

*Catherine Y. Hancock*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *David W. Ogden*, Acting Assistant Attorney General at the time the brief was filed, *Wilma A. Lewis*, U.S. Attorney

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

at the time the brief was filed, and *Robert M. Loeb*, Attorney, U.S. Department of Justice.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Lloyd Shaffer appeals the decision of the district court dismissing his case for want of jurisdiction. The district court held that Shaffer's claim, which was based upon a settlement agreement he made with the United States Department of Agriculture bringing to an end both his individual case and his participation in a class-action lawsuit against the USDA, was a contract claim in excess of $10,000, and was therefore, under the Tucker Act, 28 U.S.C. § 1491(a)(1), within the exclusive jurisdiction of the Court of Federal Claims. We affirm.

## I. Background

Lloyd Shaffer is a Mississippi farmer who has received assistance from the USDA during much of the past thirty years. In 1997 he filed in the district court a race discrimination claim against the USDA regarding loan applications he made in 1992 and 1997. Shaffer later joined as a named plaintiff in a class action lawsuit in the same court, covering essentially the same issues, *Pigford et al. v. Glickman*, Civil Action No. 97–1978 (D.D.C.). The class alleged that the USDA discriminated against black farmers in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691–1691f, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. In 1998 Shaffer and others settled their individual claims with the USDA; as a condition of the resulting Agreement Shaffer opted out of the *Pigford* suit. In return the USDA agreed, among other things, to "[f]orgive/release/cancel all [his] outstanding indebtedness to the Farm Service Agency;" to provide "priority financial and technical assistance for those USDA programs for which the Shaffers apply;" and to pay Shaffer a sum of money.

When the USDA later denied Shaffer's Year 2000 loan application, he moved in district court for an order enforcing the Agreement. The court denied the motion on the ground that it lacked jurisdiction over the matter because Shaffer had opted out of the *Pigford* class action and the Agreement did not provide for the court to exercise continuing jurisdiction over his individual case.

Shaffer then filed a new complaint, alleging various breaches of the Agreement by the USDA. The district court ruled that it did not have jurisdiction over the new case because the Tucker Act grants to the Court of Federal Claims jurisdiction over claims founded upon "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The district court ruled that the Agreement was a "contract" within the meaning of the Tucker Act, and added,

> [I]nvocation of the APA does not save the plaintiff's claims because the APA does not apply to requests for money damages, and is not applicable to declaratory and injunctive relief when another statute prohibits such relief from being sought in a particular court, as in the instant case. Additionally, to the extent that one would argue that this Court does have jurisdiction, the plaintiff has failed [to] establish standing to sue under the APA because he has not identified an independent statutory basis for relief, and has only based alleged authority on the Settlement Agreement over which the Court does not have jurisdiction.

The district court dismissed the case without prejudice.

## II.  Analysis

Shaffer argues that notwithstanding the Tucker Act, the district court has subject matter jurisdiction over his case pursuant both to the ECOA and to the APA. In the alternative he argues that the district court may exercise ancillary jurisdiction over a dispute arising out of the Agreement. The lower federal courts have only such jurisdiction as the Constitution and the Congress grant them. *See Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There appears to be no doubt that the Court of Federal Claims could entertain this case under the Tucker Act, for the purpose of which a settlement agreement is considered a contract. *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975) (settlement agreement should "be construed for enforcement purposes basically as a contract"); *Kasarsky v. Merit Sys. Prot. Bd.*, 296 F.3d 1331, 1336 (Fed. Cir. 2002); *Massie v. United States*, 166 F.3d 1184, 1189 (Fed. Cir. 1999); *Village of Kaktovik v. Watt*, 689 F.2d 222, 232 n.76 (D.C. Cir. 1982). That the Court of Federal Claims has jurisdiction does not necessarily mean, however, that its jurisdiction is exclusive. We thus turn to Shaffer's arguments in favor of concurrent jurisdiction in the district court.

A.  Subject matter jurisdiction

Shaffer first argues that the district court has subject matter jurisdiction because the Agreement settled claims arising under the ECOA and the APA. Here Shaffer relies upon *Board of Trustees of Hotel and Restaurant Employees Local 25 v. Madison Hotel*, 97 F.3d 1479 (D.C. Cir. 1996), for the proposition that a district court has subject matter jurisdiction over a settlement agreement that resolves a statutory claim within the jurisdiction of that court. We do not read *Madison Hotel* so broadly. In that case we held that the district court had subject matter jurisdiction over a settlement agreement that resolved claims arising under the ERISA statute because "enforcement of the settlement agreement . . . will almost inevitably require construction and application of specific ERISA provisions which define the scope of the employer's contribution obligations and the Funds' legal entitlements on default." *Id.* at 1485. The settlement agreement incorporated several provisions of the ERISA statute such that:

> [A]n action to redress a breach of the settlement agreement directly implicates the Funds' rights to seek enforcement of the Hotel's obligation to make "contributions in accordance with the terms and conditions of [a multiemployer] plan . . ." under section 515 of ERISA, 29

U.S.C. § 1145 (1994), and of the Hotel's obligation to pay the additional amounts in interest, liquidated damages, audit and attorneys' fees, costs or any other additional amounts, as provided for under paragraph 3 of the settlement agreement and under section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) (1994). Because, furthermore, the ERISA statute provides exclusive jurisdiction to enforce its provisions in federal courts, the district court here had federal jurisdiction to enforce the ERISA rights embodied in the settlement agreement.

*Id.* at 1485–86. Unlike the settlement agreement in *Madison Hotel*, which "referred to and reserved the Funds' right to pursue their rights to remedies enumerated and defined in the ERISA law itself," 97 F.3d at 1485, the Agreement here does not incorporate any part of either the ECOA or the APA; it merely settles the ECOA and the APA claims in return for certain specified consideration. Indeed, Shaffer is unable to point to a single provision of either the ECOA or the APA that a court would have to interpret in order to resolve this case. Shaffer's claims involve only straightforward contract issues, such as whether the Government failed to pay him monies due and whether the denial of Shaffer's Year 2000 loan violated the Agreement. Therefore, even if the district court would have subject matter jurisdiction over the enforcement of a settlement agreement with the United States the interpretation of which would require it to analyze the statute upon which the plaintiff's claim was based, Shaffer's claims would not come within that jurisdiction.

Shaffer's argument for subject matter jurisdiction under the APA fails for another reason. "[T]his Court and others have interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government, at least *vis a vis* the APA." *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992). *See International Engineering Co., Division of A–T–O, Inc. v. Richardson*, 512 F.2d 573, 577–81 (D.C. Cir. 1975); *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1484–86 (9th Cir. 1985).

B.  Ancillary Jurisdiction

Shaffer next argues that the district court may exercise ancillary jurisdiction over his claims.  The Supreme Court in *Kokkonen* recognized two purposes for which a court may assert ancillary jurisdiction: (1) "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent," 511 U.S. at 379, and (2) "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  *Id.* at 380.  The first head clearly does not apply here.  In explicating the second head the Court stated (at 381):

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal– either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.  In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

In short, a party that wants the court to retain jurisdiction over its settlement agreement should request that the district court do so in its order of dismissal.  Shaffer did not take this simple precaution.

Shaffer nonetheless invokes *Reed v. United States*, 891 F.2d 878 (11th Cir. 1990), a pre-*Kokkonen* case, for the proposition that a court may enforce a settlement agreement without incorporating that agreement into an order.  In *Reed*, however, the United States announced its intent not to honor the settlement agreement before the court dismissed the case; the court of appeals held that the district court correctly exercised its jurisdiction to enforce the terms of the settlement agreement because the case, although settled, was still pending.  *Id.* at 880.  Not so here.  The district court was therefore correct in concluding it could not exercise ancillary jurisdiction over this case.

### III.  Conclusion

The district court had neither subject matter jurisdiction nor ancillary jurisdiction over Shaffer's claim, founded, as it is, solely upon a contract with the United States.  The judgment of the district court dismissing the case is, accordingly,

*Affirmed.*