# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 13, 2005          Decided February 28, 2006

No. 04-5278

DONALD ROCHON,
APPELLANT

v.

ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED
STATES OF AMERICA,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv00958)

---

*Michael A. Rubin* argued the cause for appellant. With him
on the briefs were *Steven G. Reade* and *Emily N. Glatfelter*.

*Lisa S. Goldfluss*, Assistant U.S. Attorney, argued the cause
for appellee. With her on the brief were *Kenneth L. Wainstein*,
U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney.
*R. Craig Lawrence,* Assistant U.S. Attorney, entered an
appearance.

Before: GINSBURG, *Chief Judge*, TATEL, *Circuit Judge*, and EDWARDS,[*] *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Donald Rochon sued the Attorney General of the United States in his official capacity, claiming the Federal Bureau of Investigation had discriminated and retaliated against him, in violation both of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2000), and of a 1990 agreement settling his earlier Title VII suit against the Bureau. The alleged discrimination and retaliation took the form of the FBI's refusal, contrary to policy, to investigate death threats a federal prisoner made against Rochon and his wife. The district court dismissed Rochon's complaint on the grounds that Rochon had neither pled facts demonstrating the FBI had taken an adverse employment action against him nor shown a causal link between his protected activity and the FBI's alleged retaliation.

The district court should not have dismissed Rochon's Title VII claim because Rochon was not required to demonstrate his employer's retaliatory act was related to his employment. Further, it is unclear whether the district court had direct jurisdiction over the claim arising out of the settlement agreement. *See Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004) (per curiam). Therefore, we reverse the judgment of the district court and remand the case for further proceedings.

I. Background

In 1981 Donald Rochon began working as a Special Agent

---

[*] Senior Circuit Judge Edwards was in regular active service at the time of oral argument.

in the Omaha office of the FBI, where he became the target of a campaign of racial harassment. Rochon filed a formal complaint with his Equal Employment Opportunity Counselor in 1984. In 1987 the Department of Justice concluded the Bureau had discriminated against Rochon and then retaliated against him for complaining about the discrimination. Rochon sued the FBI and in 1990 the parties entered into a settlement agreement as part of which the Bureau agreed "not to take any retaliatory action" against Rochon in the future.

Soon thereafter, however, Ronald Kessler authored a book entitled *The FBI*, in which he attributed to FBI agents certain statements describing Rochon's performance at the Bureau as substandard. Rochon brought a second Title VII suit and in 1994 the parties entered into a second settlement agreement. This time the FBI agreed to issue a corrective statement, to refrain from interfering "with Mr. Rochon's future employment opportunities," and to pay him $40,000 in damages. The 1994 agreement expressly provided that it did not "in any way replace, diminish, or modify the terms or relief," such as the bar against retaliation, in the 1990 agreement.

In his complaint in the present case, Rochon alleges that in 1993 and 1994 the Philadelphia field office of the FBI received "credible notice and evidence of death threats directed at [him] and his wife" by an inmate in a federal prison. Rochon maintains that, contrary to "its policies, duties, and usual practices in such circumstances," the FBI neither investigated the threats nor took any steps to protect the Rochons, even after the Bureau had indicated it would do so. In 2002, when Rochon learned the FBI had failed to investigate the threats, he filed an administrative complaint.

In 2003 Rochon brought this suit in the district court, alleging the FBI's failure to investigate was discriminatory and

retaliatory, in violation both of the 1990 settlement agreement and of Title VII. The district court granted the Government's motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint, and Rochon appealed.

## II. Analysis

Rochon challenges the district court's analyses both of Title VII and of Rule 12(b)(6). The Government maintains the district court properly dismissed Rochon's claims on the merits or, alternatively, did not have subject matter jurisdiction over the claim arising out of the settlement agreement. We begin, as we must, with the issue of jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

## A. Jurisdiction

The Government argues that pursuant to the Tucker Act, the district court lacked jurisdiction over Rochon's claim that the Bureau breached their 1990 settlement agreement. The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2000). When the contract claim is for damages in excess of $10,000, as it is in this case, the jurisdiction of the Court of Federal Claims is exclusive. *Id.* § 1346(a)(2) (2000). In two decisions of this court, issued after the district court's ruling in this case, we have made clear that "a claim for breach of a Title VII settlement agreement is a contract claim within the meaning of the Tucker Act" and, therefore, for claims exceeding $10,000 jurisdiction belongs with the Court of Federal Claims. *Hansson v. Norton*, 411 F.3d 231, 232 (D.C. Cir. 2005) (citing *Brown*, 389 F.3d at 1297).

Rochon maintains the district court had jurisdiction over his contract claim pursuant to this court's decision in *Hansson*, 411 F.3d 231. In *Hansson*, we held the district court lacked jurisdiction after noting the plaintiff did not seek, along with her claim for damages within the jurisdiction of the Court of Federal Claims, equitable relief, which ordinarily only the district court could grant. *Id.* at 232, 236. Because Rochon has requested, in addition to damages, declaratory and injunctive relief, he argues the Court of Federal Claims lacks jurisdiction to hear his claims. On the contrary, the combination of a claim for equitable relief brought under Title VII and a related claim for breach of contract does not give the district court jurisdiction over the contract claim that, if brought separately, would be exclusively in the Court of Federal Claims under 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). *Brown*, 389 F.3d at 1297; *see also Brown v. United States*, 271 F. Supp. 2d 225, 227-28 (D.D.C. 2003) (describing claims).

In the present case, however, it is not immediately clear whether Rochon's claim, if brought separately, would fall within the jurisdiction of the Court of Federal Claims. That court does not have jurisdiction over claims for damages in cases "sounding in tort." 28 U.S.C. § 1491(a). Rochon has requested compensatory damages of up to $300,000 "for the emotional distress and other harms" alleged in the complaint. Although his claim for "emotional distress" may sound in tort, that does not end the analysis. The Federal Circuit has held that where "the primary thrust of [a] complaint is breach of contract, even if a [claim sounding in tort] would lie, the Claims Court would retain jurisdiction over the suit." *Wood v. United States*, 961 F.2d 195, 198 (Fed. Cir. 1992); *see also Awad v. United States*, 301 F.3d 1367 (Fed. Cir. 2002) (it is "well established that where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the ... jurisdiction of the Court of Federal Claims").

This case was decided on Rochon's complaint and the Government's motion to dismiss under Rules 12(b)(1) and 12(b)(6). Because the Government has not yet filed an answer, Rochon may amend his complaint as of right, *see* Fed. R. Civ. P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served"), and take the opportunity to clarify whether the "primary thrust" of his claim is, in fact, breach of contract and thus within the jurisdiction of the Court of Federal Claims.

Even if the district court concludes the gravamen of Rochon's claim lies in contract, however, it does not necessarily follow that the district court is barred from exercising jurisdiction over that claim. As explained in Part II.C below, we are reinstating Rochon's statutory claim. On remand, therefore, the district court may determine it has ancillary jurisdiction over his contract claim. *See Shaffer v. Veneman*, 325 F.3d 370, 373 (D.C. Cir. 2003) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994)) (court may exercise ancillary jurisdiction "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent").

B. Sovereign Immunity

Under 42 U.S.C. § 2000e-3(a), a private employer may not "discriminate against any [employee] ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Several circuits have held this ban on retaliation applies to the Government through § 2000e-16, which prohibits the Executive Branch from engaging in "any discrimination based on race, color, religion, sex, or national origin" in any "personnel action[]." *See Bd. of County Comm'rs, Fremont County, Colo. v. EEOC*, 405 F.3d 840, 845 (10th Cir. 2005) (describing the

issue as "well-settled" and collecting cases from the Fifth, Seventh, and Ninth Circuits). Although we have not directly confronted the issue, we have recognized the cogency of this reasoning. *See Forman v. Small*, 271 F.3d 285, 297 (2001) (citing *Porter v. Adams*, 639 F.2d 273, 277-78 (5th Cir. 1981)). The Government now contends, however, as it did not in those cases, that the Congress has not waived sovereign immunity from claims of retaliation.

Although the Government conceded in its brief that it "has indeed waived sovereign immunity for retaliation claims," at oral argument, counsel maintained it has not done so because there is in § 2000e-16 no specific and unequivocal waiver of sovereign immunity with respect to claims of retaliation, and the court will not hold the United States has waived its sovereign immunity unless the waiver is "unequivocally expressed" in an Act of Congress. *Hubbard v. EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992) (internal quotation marks omitted). Sovereign immunity, moreover, being jurisdictional, *see Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) (because "sovereign immunity is jurisdictional in nature ... the terms of [the Government's] consent to be sued in any court define that court's jurisdiction to entertain the suit"), we must now consider, notwithstanding the belatedness of the Government's *volte face*, whether the Congress has unequivocally exposed the United States to damage claims based upon retaliation in violation of Title VII.

We conclude the Congress clearly has waived sovereign immunity from claims of retaliation. Section 2000e-16(a) prohibits the executive departments from discriminating in personnel actions. A civil action alleging a violation of § 2000e-16(a) is, per § 2000e-16(d), governed by "[t]he provisions of section 2000e-5(f) through (k)"; those provisions are applicable to actions against all employers subject to Title VII, public and

private alike. One such provision, § 2000e-5(g)(1), expressly allows a court to award equitable relief, including back pay, to any claimant with respect to whom the defendant employer "intentionally engaged ... in an unlawful employment practice," and § 2000e-3(a), in turn, clearly makes retaliation "an unlawful employment practice." It is clear, therefore, the Congress has made the United States amenable to suits seeking equitable relief and back pay for retaliation. The district court, consequently, had jurisdiction over Rochon's statutory claim.

## C. The Motion to Dismiss

The next question is whether the district court correctly dismissed Rochon's complaint for failure to state a claim upon which relief can be granted, per Rule 12(b)(6). This court reviews *de novo* a district court order granting a motion to dismiss. *Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 670-71 (D.C. Cir. 2005).

A complaint should not be dismissed for failure to state a claim unless, taking as true the facts alleged in the complaint, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This is the standard because "the issue presented by a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998) (internal quotation marks omitted).

## 1. Adverse Action

The district court concluded that, because Rochon did not suffer a "diminution in pay or benefits," he did not experience an "adverse personnel action" and was therefore not the victim

of any retaliation cognizable under Title VII. Rochon argues § 2000e-3(a), although referenced in § 2000e-16(a), which deals with "personnel actions," does not require that the employer's act of retaliation be related to the plaintiff's employment: The "plain and unambiguous terms" of § 2000e-3(a) itself, he points out, "contain no employment-related limitation." Here Rochon contrasts § 2000e-2(a)(1), which prohibits discrimination more narrowly "with respect to ... compensation, terms, conditions, or privileges of employment," and refers us to the Supreme Court's instruction in *Russello v. United States*: "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)) (alteration in original).

The Government urges us to reject Rochon's "plain language" argument on the undoubtedly solid ground that "the meaning of statutory language, plain or not, depends on context." *Holloway v. United States*, 526 U.S. 1, 7 (1999) (internal quotation marks omitted). The anti-retaliation provision is part of a statute that prohibits discriminatory employment practices. Therefore, the Government argues, "[t]o suggest that the scope of liability for discrimination based on race should be narrower than the scope of liability for discriminating against someone complaining about race discrimination makes no sense in the context of the statute." Furthermore, the Government asserts, Rochon's interpretation would have "extremely problematic" consequences because it would allow government employees to sue the Government claiming retaliation based upon the exercise of quotidian governmental functions adverse to their interests, such as a tax audit by the Internal Revenue Service.

We begin, of course, with the text of the statute. In Title VII the Congress prohibited employers from retaliating against employees for having engaged in activity protected by Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Although this court has, as the Government points out, described the prima facie case for retaliation as requiring an adverse "personnel" or adverse "employment" action, *e.g.*, *Stewart v. Evans*, 275 F.3d 1126, 1134 (2002), we have also, as Rochon notes, spoken more generally of an employer's "conduct having an adverse impact on the plaintiff." *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1423 (1988). Phrases used in passing notwithstanding, the fact is we have yet to determine whether the adverse action alleged must be an adverse personnel action, or otherwise related to the plaintiff's employment, in order to state a claim under Title VII.

In *Passer v. American Chemical Society*, 935 F.2d 322, 330 (D.C. Cir. 1991), we confronted the question whether a plaintiff claiming retaliation under the Age Discrimination in Employment Act must allege an adverse employment action. There the plaintiff alleged that, after he had charged his employer with violating the ADEA, the defendant unlawfully retaliated by cancelling a symposium that was to have been held in his honor. The anti-retaliation provision of the ADEA, 29 U.S.C. § 623(d), which closely tracks the cognate provision of Title VII, makes it "unlawful ... to discriminate against any

[employee] ... because such individual ... has opposed any practice made unlawful by this section." We concluded: "The statute itself proscribes 'discriminat[ion]' against those who invoke the Act's protections; the statute does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion." *Passer*, 935 F.2d at 331. The court in *Passer* thus determined the concept of retaliation encompasses more than just adverse employment actions.

Carrying our approach in *Passer* over to the closely related context of Title VII accords with the decisions of the four other circuits that do not require that a retaliatory action be employment-related in order to state a claim under Title VII. *See Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (retaliation includes "any adverse treatment that is based on a retaliatory motive"); *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 606 (7th Cir. 1999) (§ 2000e-3(a) is broad enough to prohibit retaliatory actions "that are not ostensibly employment related"); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) (holding "Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions"); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996) (noting "[i]t would be illogical to define a section [2000e-3(a)] employee liberally to include former employees and to simultaneously define an adverse employment action narrowly by limiting it to those formal practices linked to an existing employee/employer relationship"); *see also White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) (dictum describing *Passer*, 935 F.2d 322, as a "well-reasoned opinion[] that conclude[s] that ... an employer is prohibited [by the ADEA] from retaliating in materially adverse ways, regardless of whether the retaliatory acts affect employment"). *But see Nelson v. Upsala College*, 51 F.3d 383, 388 (3d Cir. 1995)

(requirement that plaintiff obtain prior approval before visiting employer's campus did not constitute retaliation prohibited by § 2000e-3(a), which "requires a harm which impedes plaintiff's employment situation"); *cf. Manning v. Metro. Life Ins. Co.,* 127 F.3d 686, 692 (8th Cir. 1997) (requirement that plaintiff demonstrate "materially adverse employment action" inferred from § 2000e-2(a)(1)-(2)).

Our decision in *Passer* is also consistent with the understanding of the EEOC: "The statutory retaliation clauses [including that of Title VII] prohibit any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." EEOC Compliance Manual, Section 8-II.D.3 (1998). The EEOC appears to have based its broad reading of retaliation upon the Supreme Court's functional approach in *Robinson v. Shell Oil Co.*, where the Court adopted the agency's position that "employee" as used in § 2000e-3(a) comprises former as well as current employees because that interpretation is more "consisten[t] with a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms." 519 U.S. 337, 346 (1997). As the Court explained, "[I]t would be destructive of this purpose of the antiretaliation provision for an employer to be able to retaliate with impunity against an entire class of acts under Title VII -- for example, complaints regarding discriminatory termination." *Id.*

Considering the Supreme Court's reasoning and its description of "a primary purpose" of § 2000e-3(a), we reject the Government's contextual argument that it is illogical to interpret § 2000e-16(a) as reaching an employer's retaliatory acts outside the realm of employment. The Government's suggested limitation, like that of the respondent in *Robinson*, would allow "an employer ... to retaliate with impunity" against

an employee who engages in protected activity as long as the employer takes an action unrelated to the plaintiff's employment.  To take the Government's own example, the IRS could retaliate against a complaining employee by subjecting him to a tax audit.  Or an employer could falsely accuse an employee of engaging in criminal activity, as was alleged in *Aviles*, 183 F.3d at 606.  Thus is it clear the Government's reading of § 2000e-3(a) "would be destructive of this purpose of the antiretaliation provision," namely, "[m]aintaining unfettered access to statutory remedial mechanisms." *Robinson*, 519 U.S. at 346.

We recognize the plaintiffs in *Passer* and *Robinson* each challenged as retaliatory the actions of a private employer.  Here we must determine whether the Government is similarly liable under § 2000e-3(a) for retaliation that does not come in the form of a personnel action.  In other words, we must consider whether, when referenced in § 2000e-16(d) via § 2000e-5(g)(1)-(2)(A), the general ban on retaliation in § 2000e-3(a) is limited by the requirement in § 2000e-16(a) that "[a]ll [Government] personnel actions" be made free from discrimination.  We do not believe the prohibition is so qualified.  Nothing in § 2000e-16(d) or § 2000e-5(g) suggests § 2000e-3(a) is to be read differently when applied to the Government.  Nor did the Supreme Court in any way qualify its observation in *Morton v. Mancari*, 417 U.S. 535, 547 (1974), that "the substantive anti-discrimination law embraced in Title VII was carried over and applied to the Federal Government" through the addition of § 2000e-16 in 1972.  *See also Dothard v. Rawlinson*, 433 U.S. 321, 331 n.14 (1977) (noting "Congress expressly indicated the intent that the same Title VII principles be applied to governmental and private employers alike" (citing H.R. REP. NO. 92-238, at 17 (1971); S. REP. NO. 92-415, at 10 (1971))).  In light of the Congress's recognized intent in 1972 to apply to the Government the principles it had in 1964 applied to private employers, we now

hold that an alleged act of retaliation by the Government need not be related to the plaintiff's employment in order to state a claim of discrimination under Title VII.

We are not indifferent to the Government's concern that too broad a reading of § 2000e-3(a) could lead to a barrage of lawsuits against it based upon trivial actions, such as the "misdelivery of a letter" by the Postal Service. On the contrary, we think making actionable insignificant disparities in the treatment of employees of different races, or religions, *et cetera*, is too absurd to be attributed to the Congress. Such suits are properly precluded, however, not by the court creating an atextual loophole for forms of retaliation unrelated to the plaintiff's employment, but by our requiring that the alleged retaliation be "material" or "significant." Indeed, we have already held that materiality is implicit in the term "discriminate" as it is used in Title VII. *See Brown v. Brody*, 199 F.3d 446, 457 (1999) (plaintiff must demonstrate "materially adverse consequences ... such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm"). In the framework of Title VII, a claim of retaliation is necessarily a claim of discrimination and the requirement of materiality therefore inheres in it as well.

We therefore agree with several other circuits that in order to support a claim of retaliation a plaintiff must demonstrate the "employer's challenged action would have been material to a reasonable employee," which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005); *see, e.g.*, *Manning*, 127 F.3d at 692 ("not everything that makes an employee unhappy is an actionable adverse action"); *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997) (dictum noting "there is room for a *de minimis* threshold" in claims of retaliatory conduct).

And this is so regardless whether the alleged retaliatory act is related to the plaintiff's employment.

The retaliatory conduct Rochon alleges, to wit, the FBI's refusal to investigate, as it would ordinarily do for any member of the public, a death threat made against him by a federal prison inmate, meets this threshold of significance. In other words, a reasonable FBI agent well might be dissuaded from engaging in activity protected by Title VII if he knew that doing so would leave him unprotected by the FBI in the face of threats against him or his family.

2. Causation

The district court also concluded Rochon had failed to state a claim because "[t]here is no support to show that the [FBI's] adverse action would not have occurred 'but for' [Rochon's] protected activity." Rochon is not required, however, in order to state a claim of retaliation, to allege facts sufficient to negate the FBI's alternative explanations for its actions -- whatever they may turn out to be. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000). On the contrary, in order to survive a motion to dismiss, "all [the] complaint has to say," *id.* at 1115, is "the Government retaliated against me because I engaged in protected activity." Rochon's complaint meets this liberal pleading standard.

Rochon unquestionably engaged in statutorily protected activity when he filed Title VII complaints against the FBI. And we have long held a "causal connection ... may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse ... action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (1985). Here, Rochon claims the FBI refused to investigate threats against him around the time he and the Bureau settled his

Title VII suit concerning the statements in Kessler's book. The district court erred, therefore, in concluding that Rochon failed "to [allege sufficient] facts to support a reasonable inference that the FBI acted with retaliatory or discriminatory motives."

## III.  Conclusion

We hold Title VII makes unlawful any act of retaliation by an employer that well might dissuade a reasonable employee from making or supporting a charge of discrimination pursuant to Title VII.  The district court therefore erred in dismissing Rochon's statutory claim.  Furthermore, it is unclear whether the district court could exercise jurisdiction directly over Rochon's claim based upon the agreement into which he and the FBI had entered to settle his prior lawsuit.  The case is accordingly remanded to the district court for further proceedings consistent with this opinion.

*So ordered.*