Justice Alito,
concurring in the judgment.
I concur in the judgment, but I disagree with the Court’s interpretation of the antiretaliation provision of Title VII of the Civil Rights Act of 1964, § 704(a), 78 Stat. 257, as amended, 42 U. S. C. §2000e-3(a). The majority’s interpretation has no basis in the statutory language and will, I fear, lead to practical problems.
I
Two provisions of Title VII are important here. Section 703(a) prohibits a broad range of discriminatory employment practices.[1] Among other things, § 703(a) makes it unlawful *74 for an employer “to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin.” 42 U. S. C. § 2000e-2(a)(1) (emphasis added).
A complementary and closely related provision, § 704(a), makes it unlawful to “discriminate against” an employee for retaliatory purposes. Section 704(a) states in pertinent part:
“It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.” 42 U. S. C. § 2000e-3(a) (emphasis added).
In this case, we must ascertain the meaning of the term “discriminate” in § 704(a). Two possible interpretations are suggested by the language of §§ 703(a) and 704(a).
The first is the interpretation that immediately springs to mind if § 704(a) is read by itself—i. e., that the term “discriminate” in § 704(a) means what the term literally means, to treat differently. Respondent staunchly defends this interpretation, which the majority does not embrace, but this interpretation presents problems that are at least sufficient to raise doubts about its correctness. Respondent’s interpretation makes § 703(a) narrower in scope than § 704(a) and thus implies that the persons whom Title VII is principally designed to protect—victims of discrimination based on race, color, sex, national origin, or religion—receive less protection than victims of retaliation. In addition, respondent’s interpretation “makes a federal case” out of any small difier *75 ence in the way an employee who has engaged in protected conduct is treated. On respondent’s view, a retaliation claim must go to the jury if the employee creates a genuine issue on such questions as whether the employee was given any more or less work than others, was subjected to any more or less supervision, or was treated in a somewhat less friendly manner because of his protected activity. There is reason to doubt that Congress meant to burden the federal courts with claims involving relatively trivial differences in treatment. See Oncale v. Sundowner Offshore Services, Inc., 523 U. S. 75, 81 (1998); Faragher v. Boca Raton, 524 U. S. 775, 786-788 (1998).
The other plausible interpretation, and the one I favor, reads §§ 703(a) and 704(a) together. Under this reading, “discrimination]” under § 704(a) means the discriminatory acts reached by § 703(a)—chiefly, discrimination “with respect to ... compensation, terms, conditions, or privileges of employment.” This is not, admittedly, the most straightforward reading of the bare language of § 704(a), but it is a reasonable reading that harmonizes §§ 703(a) and 704(a). It also provides an objective standard that permits insignificant claims to be weeded out at the summary judgment stage, while providing ample protection for employees who are subjected to real retaliation.
The Courts of Appeals that have interpreted § 704(a) in this way state that it requires a materially adverse employment action. See, e. g., Von Gunten v. Maryland, 243 F. 3d 858, 865 (CA4 2001); Gupta v. Florida Bd. of Regents, 212 F. 3d 571, 587 (CA11 2000), cert. denied, 531 U. S. 1076 (2001); Robinson v. Pittsburgh, 120 F. 3d 1286, 1300 (CA3 1997). In Burlington Industries, Inc. v. Ellerth, 524 U. S. 742, 761-762 (1998), we “import[ed]” this test for use in a different context—to define the term “tangible employment action,” a concept we used to limit an employer’s liability for harassment carried out by its supervisors. We explained that “[a] tangible employment action constitutes a significant change *76 in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.” Id., at 761.
II
The majority does not adopt either of the two interpretations noted above. In Part II-A of its opinion, the majority criticizes the interpretation that harmonizes §§ 703(a) and 704(a) as not sufficiently faithful to the language of § 704(a). Although we found the materially adverse employment action test worthy of “import[ation]” in Ellerth, the majority now argues that this test is too narrow because it permits employers to take retaliatory measures outside the workplace. Ante, at 63-64 (citing Rochon v. Gonzales, 438 F. 3d 1211, 1213 (CADC 2006); Berry v. Stevinson Chevrolet, 74 F. 3d 980, 984, 986 (CA10 1996)). But the majority’s concern is misplaced.
First, an employer who wishes to retaliate against an employee for engaging in protected conduct is much more likely to do so on the job. There are far more opportunities for retaliation in that setting, and many forms of retaliation off the job constitute crimes and are therefore especially risky.
Second, the materially adverse employment action test is not limited to on-the-job retaliation, as Rochon, one of the cases cited by the majority, illustrates. There, a Federal Bureau of Investigation agent claimed that the Bureau had retaliated against him by failing to provide the off-duty security that would otherwise have been furnished. See 438 F. 3d, at 1213-1214. But, for an FBI agent whose life may be threatened during off-duty hours, providing security easily qualifies as a term, condition, or privilege of employment. Certainly, if the FBI had a policy of denying protection to agents of a particular race, such discrimination would be actionable under § 703(a).
But in Part II-B, rather than adopting the more literal interpretation based on the language of § 704(a) alone, the *77 majority instead puts that language aside and adopts a third interpretation—one that has no grounding in the statutory language. According to the majority, § 704(a) does not reach all retaliatory differences in treatment but only those retaliatory acts that “well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.” Ante, at 68 (internal quotation marks omitted).
I see no sound basis for this test. The language of § 704(a), which employs the unadorned term “discriminate,” does not support this test. The unstated premise of the majority’s reasoning seems to be that § 704(a)’s only purpose is to prevent employers from taking those actions that are likely to stop employees from complaining about discrimination, but this unstated premise is unfounded. While surely one of the purposes of § 704(a) is to prevent employers from engaging in retaliatory measures that dissuade employees from engaging in protected conduct, there is no reason to suppose that this is § 704(a)’s only purpose. Indeed, the majority itself identifies another purpose of the antiretaliation provision: “to prevent harm to individuals” who assert their rights. Ante, at 63. Under the majority’s test, however, employer conduct that causes harm to an employee is permitted so long as the employer conduct is not so severe as to dissuade a reasonable employee from making or supporting a charge of discrimination.
Ill
The practical consequences of the test that the majority adopts strongly suggest that this test is not what Congress intended.
First, the majority’s test leads logically to perverse results. Under the majority’s test, § 704(a) reaches retaliation that well might dissuade an employee from making or supporting “a charge of discrimination.” Ante, at 68 (internal quotation marks omitted). I take it that the phrase “a charge of discrimination” means the particular charge that *78 the employee in question filed [2] and if that is the proper interpretation, the nature of the discrimination that led to the filing of the charge must be taken into account in applying § 704(a). Specifically, the majority’s interpretation logically implies that the degree of protection afforded to a victim of retaliation is inversely proportional to the severity of the original act of discrimination that prompted the retaliation. A reasonable employee who is subjected to the most severe discrimination will not easily be dissuaded from filing a charge by the threat of retaliation; the costs of filing the charge, including possible retaliation, will have to be great to outweigh the benefits, such as preventing the continuation of the discrimination in the future and obtaining damages and other relief for past discrimination. Because the possibility of relatively severe retaliation will not easily dissuade this employee, the employer will be able to engage in relatively severe retaliation without incurring liability under § 704(a). On the other hand, an employee who is subjected to a much milder form of discrimination will be much more easily dissuaded. For this employee, the costs of complaining, including possible retaliation, will not have to be great to outweigh the lesser benefits that might be obtained by filing a charge. These topsy-turvy results make no sense.
Second, the majority’s conception of a reasonable worker is unclear. Although the majority first states that its test is whether a “reasonable worker” might well be dissuaded, ante, at 68 (internal quotation marks omitted), it later sug *79 gests that at least some individual characteristics of the actual retaliation victim must be taken into account. The majority comments that “the significance of any given act of retaliation will often depend upon the particular circumstances,” and provides the following illustration: “A schedule change in an employee’s work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.” Ante, at 69.
This illustration suggests that the majority’s test is not whether an act of retaliation well might dissuade the average reasonable worker, putting aside all individual characteristics, but, rather, whether the act well might dissuade a reasonable worker who shares at least some individual characteristics with the actual victim. The majority’s illustration introduces three individual characteristics: age, gender, and family responsibilities. How many more individual characteristics a court or jury may or must consider is unclear.
Finally, the majority’s interpretation contains a loose and unfamiliar causation standard. As noted, the majority’s test asks whether an employer’s retaliatory act “well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.” Ante, at 68 (internal quotation marks omitted; emphasis added). Especially in an area of the law in which standards of causation are already complex, the introduction of this new and unclear standard is unwelcome.
For these reasons, I would not adopt the majority’s test but would hold that § 704(a) reaches only those discriminatory practices covered by § 703(a).
IV
Applying this interpretation, I would affirm the decision of the Court of Appeals. The actions taken against respondent—her assignment to new and substantially less desirable duties and her suspension without pay—fall within the definition of an “adverse employment action.”
*80 With respect to respondent’s reassignment, Ellerth specifically identified a “reassignment with significantly different responsibilities” as a “tangible employment action.” 524 U. S., at 761. Here, as the Court of Appeals stated, “[i]n essence, . . . the reassignment was a demotion.” 364 F. 3d 789, 803 (CA6 2004). The “new position was by all accounts more arduous and ‘dirtier,’ ” ibid., and petitioner’s sole stated rationale for the reassignment was that respondent’s prior duties were better suited for someone with greater seniority. This was virtually an admission that respondent was demoted when those responsibilities were taken away from her.
I would hold that respondent’s suspension without pay likewise satisfied the materially adverse employment action test. Accordingly, although I would hold that a plaintiff asserting a § 704(a) retaliation claim must show the same type of materially adverse employment action that is required for a § 703(a) discrimination claim, I would hold that respondent met that standard in this case, and I, therefore, concur in the judgment.

 Section 703(a) states in pertinent part:
“It shall be an unlawful employment practice for an employer—
“(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin; or
“(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status *74 as an employee, because of such individual’s race, color, religion, sex, or national origin.” 42 U. S. C. §2000e-2(a) (emphasis added).

 The alternative interpretation—that “a charge” does not mean the specific charge filed by the employee but an average or generic charge—would be unworkable. Without gauging the severity of the initial alleged discrimination, a jury cannot possibly compare the costs and benefits of filing a charge and, thus, cannot possibly decide whether the employer’s alleged retaliatory conduct is severe enough to dissuade the filing of a charge. A jury will have no way of assessing the severity of the average alleged act of discrimination that leads to the filing of a charge, and, therefore, if “a charge” means an average or generic charge, the majority’s test will leave juries hopelessly at sea.