United States Court of Appeals,

Fifth Circuit.

No. 93-7566.

Bill J. GANN, Plaintiff-Appellee/Cross-Appellant,

v.

FRUEHAUF CORPORATION, Defendant-Appellant/Cross-Appellee,

and

Connecticut General Life Insurance Company, et al.,
Defendants/Cross-Appellees.

May 30, 1995.

Appeals from the United States District Court for the Southern District of Mississippi.

Before REYNALDO G. GARZA, DeMOSS and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The Appellant/Cross-Appellee Fruehauf Corporation ("Fruehauf") appeals a jury verdict finding that Fruehauf wrongfully discharged Appellee/Cross-Appellant Bill Gann ("Gann") in violation of Washington state law and a Rule 11 monetary sanction imposed on its counsel. Gann appeals the district court's entrance of summary judgment in favor of Fruehauf and Cross-Appellees Connecticut General Life Insurance Company ("Connecticut General"), Karen Goralski ("Goralski"), Julie Szemborski ("Szemborski"), Carolyn Robinson ("Robinson"), and Mongoose Administrators, Inc. ("Mongoose") on his claims that they violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1162. We AFFIRM in part and REVERSE in part.

1

FACTS AND PROCEDURAL HISTORY

Gann became an employee of Fruehauf in 1984 in California. Fruehauf transferred Gann to its state of Washington branch in April 1986. Gann hurt himself at work in January 1988, and filed for worker's compensation benefits in Washington on July 15, 1988. Fruehauf transferred Gann to its Mississippi branch in August 1988, and terminated Gann's employment on November 2, 1988.

In April 1989, Gann filed this action in a federal court in Mississippi. The defendants included Fruehauf (which maintained an employee benefit plan in which Gann participated), Connecticut General (which provided long-term group disability insurance to Fruehauf in support of the employee benefit plan), Goralski (the administrator of certain employee benefit plans for Fruehauf), Szemborski (a benefit analyst for Connecticut General), Robinson (a benefit analyst for Connecticut General) and Mongoose (the administrator of Gann's continuation coverage under the employee benefit plan established by Fruehauf).

In his complaint, Gann asserted that all the defendants improperly denied his claim for disability benefits in violation of ERISA and COBRA. Gann also asserted a claim of wrongful discharge against Fruehauf in violation of a Washington statute, Wash.Rev.Code § 51.48.025(1), claiming that Fruehauf discharged him because he had filed for worker's compensation benefits.

The district court dismissed Gann's ERISA and COBRA claims on a summary judgment motion by the defendants, but allowed Gann's wrongful discharge claim to go to a jury. The jury rendered a

2

verdict in favor of Gann for $112,500.

Fruehauf's Appeal

Fruehauf raises several arguments on appeal contending that: (1) the district court erred in applying Washington, instead of Mississippi, law to the wrongful discharge claim; (2) the jury verdict is against the overwhelming weight of the evidence; (3) the damages awarded by the jury are not substantiated by the evidence; (4) a J.N.O.V., New Trial, and/or Remittitur should have been granted; and (5) the district court erred in imposing sanctions on Fruehauf and its counsel.

I

Fruehauf argues that the district court erred in applying Washington law to Gann's wrongful discharge claim. In his complaint, Gann argues that Fruehauf wrongfully discharged him because he pursued his rights for worker's compensation. Such motivations behind a discharge are made actionable by a Washington statute. Wash.Rev.Code § 51.48.025(1). Mississippi law, however, does not recognize such a cause of action, as all employment contracts for an indefinite term are terminable at will for any reason. *Green v. Amerada-Hess Corp.,* 612 F.2d 212, 214 (5th Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).

The conflict of law rules of the state in which the district court is located are to be used in determining the applicable law. *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 167-68, 46 L.Ed.2d 3 (1975). A district court's determination of state law is reviewed *de novo* by an appellate court. *Allison v.*

3

*ITE Imperial Corp.,* 928 F.2d 137, 139 (5th Cir.1991). Here, the district court is located in Mississippi.[1] Mississippi courts have held that a "center of gravity" or "the most substantial relationship" rule applies. *White v. Malone Properties, Inc.,* 494 So.2d 576, 578 (Miss.1986).

In interpreting this rule for tort actions, Mississippi courts have applied the criteria of §§ 6 and 145 of the Restatement (Second) of Conflict of Laws. *McDaniel v. Ritter,* 556 So.2d 303, 310 (Miss.1989).[2] Although § 145 lists it as the first factor to

---

[1]Fruehauf cites *French v. Beatrice Foods Co.,* 854 F.2d 964 (7th Cir.1988), as authority in support of his arguments. However, *French* concerns the application of Illinois conflict of law rules, and Fruehauf does not demonstrate the connection between the doctrines of Illinois and Mississippi.

[2]Section 6 provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

>> (a) the needs of the interstate and international systems,

>> (b) the relevant policies of the forum,

>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

>> (d) the protection of justified expectations,

>> (e) the basic policies underlying the particular field of law,

>> (f) certainty, predictability and uniformity of result, and

be considered, the place of injury is not the sole determinative factor. *Mitchell v. Craft,* 211 So.2d 509, 512-13 (Miss.1968). Further, the criteria are not strict elements that must always be present for a state's law to be applied, nor is the formula to be precisely followed in every instance. "The principles of Sections 6 and 145 of the Restatement (Second) defy mechanical application—they are less "rules of law' than generally-stated guideposts." *McDaniel v. Ritter, supra,* at 310. A literal interpretation of the two sections, however, would have the courts focus upon the states picked out by the criteria of § 145. *Allison v. ITE Imperial Corp., supra,* at 141. These states would then be compared using the criteria of § 6. *Id.*

---

> (g) ease in the determination and application of the law to be applied.

Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

>> (a) the place where the injury occurred,

>> (b) the place where the conduct causing the injury occurred,

>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

>> (d) the place where the relationship, if any, between the parties is centered.

5

Mississippi is the state where the injury (termination) occurred, § 145(2)(a), but we view the conduct causing the injury to have occurred in Washington,[3] § 145(2)(b). Section 145(2)(c), the domicile, residence, place of incorporation, and place of business of the parties, points to Mississippi as Gann's residence at the time of his termination. Fruehauf, on the other hand, conducted business in California, Washington, and Mississippi, and had its principal headquarters in Michigan. Finally, § 145(2)(d), the place where the relationship between the parties is centered, points to Washington. Gann worked for Fruehauf in Washington, his injury occurred in Washington, and the act which he claims prompted his discharge by Fruehauf, the filing for and receiving of worker's compensation benefits, occurred in Washington.

Although the parties had contacts with other states according to the analysis of § 145, the states with the most interest in this matter, a major component of the § 6 analysis, are Mississippi and Washington. Fruehauf argues that Mississippi has the greater interest, as the place of the injury is Mississippi, and Gann was a resident of Mississippi at the time of the discharge. Further, Fruehauf argues that Mississippi has a compelling interest in the correct application of its employment laws to the employment activities within Mississippi.

With respect to the facts of this case, we disagree with

---

[3]Gann contends that it was his action in pursuing worker's compensation benefits in Washington, while Fruehauf contends that Gann's termination was the result of Gann's work performance in Washington revealed by an internal audit.

Fruehauf's assessment.  The relationship of the parties centers mostly on Washington.  Gann worked for Fruehauf in Washington for approximately two and a half years, and it is in Washington where Gann hurt himself and filed for worker's compensation benefits. Although the termination occurred in Mississippi, the period of time in which Gann resided in Mississippi was only three months. We think it significant that the trial court found that the record supports the finding that the contract of employment was made between Gann and Fruehauf outside of Mississippi and prior to Gann's arrival in Mississippi to perform his duties for Fruehauf. We think that under the unique circumstances of this case Washington's interest in this matter is paramount to that of Mississippi.  We note, additionally, that the right given by Washington, to obtain worker's compensation benefits without fearing discharge, would be unnecessarily diluted if workers could be dispatched to other states so that they could be discharged in contravention of the policies of the state of Washington.[4]

---

[4]In finding the law of Washington to apply to this case, we reject Fruehauf's reliance on *McDaniel v. Ritter, supra,* for the proposition that the application of Washington law in this case would be offensive to the public policy of Mississippi. Mississippi courts have held that the laws of other states would not be applied if the laws are antagonistic to the interests and policies of Mississippi.  In *McDaniel,* it was held that a foreign contributory negligence regime would be offensive to the comparative negligence regime of Mississippi because enforcement of the foreign state law "would be offensive to the deeply ingrained or strongly felt public policy of" Mississippi. *McDaniel v. Ritter, supra,* at 316-17.  However, the issue in this case is whether a regime that recognizes a wrongful discharge cause of action "would be offensive to the deeply ingrained or strongly felt public policy of" Mississippi.

Where the specific public policy issue involves a

7

Fruehauf next argues that the jury verdict in favor of Gann on the wrongful discharge cause of action was against the overwhelming weight of the evidence and should be reversed.

In reviewing jury verdicts, the appellate court must view all of the evidence in favor of the prevailing party. *Gibraltar Sav. v. LDBrinkman Corp.,* 860 F.2d 1275, 1297 (5th Cir.1988), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989). "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Id.* "Substantial evidence, while something less than the weight of the evidence, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Id.*

In order to establish a prima facie claim under Washington law for wrongful discharge, Gann must prove (1) that he exercised his right for worker's compensation or told Fruehauf that he was

---

non-resident or a contract made outside of Mississippi, Mississippi courts have held that its public policy concerns are not implicated. *Boardman v. United Services Auto. Assn.,* 470 So.2d 1024, 1039 (Miss.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985). Here, the district court found that the contract was made outside of Mississippi. The record supports such finding. Accordingly, *McDaniel* does not preclude the application of Washington law in Mississippi, and because Washington has the greater interest, we hold that the trial court correctly applied the law of the state of Washington.

going to exercise his right; (2) that he was discharged; and (3) that there was a causal connection between the exercise of his legal right and the discharge. *Wilmot v. Kaiser Aluminum & Chemical Corp.,* 118 Wash.2d 46, 821 P.2d 18, 28-29 (1991). Once Gann meets this standard, Fruehauf must articulate a legitimate reason for the discharge. *Id.* 821 P.2d at 29. Gann must then prove either that this legitimate reason was a pretext or that retaliation was a substantial or important factor motivating the discharge. *Id.* at 31.

The evidence of an improper motive need not be direct. "Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive." *Id.* at 29. Further, "[p]roximity in time between the claim and the firing is a typical beginning point, coupled with evidence of satisfactory work performance and supervisory evaluations." *Id.*

Fruehauf claims that Gann failed to prove a causal connection between his discharge and his filing for worker's compensation benefits. Specifically, Fruehauf claims that Gann has not shown that Fruehauf's stated reason for the discharge (that Gann performed very poorly) was a pretext or that retaliation was a substantial factor motivating the discharge. We disagree.

The proximity of Gann's pursuing worker's compensation benefits and his discharge (three and a half months) together with evidence that Gann's personnel file contained only positive supervisory evaluations and that he had never received any

9

criticisms from anyone in Fruehauf concerning his work performance support the jury verdict. In addition, there is testimony from Gann that, after he had arrived in Washington, he had complained to his superiors many times about the poor performance of certain individuals, but that nothing had been done. Finally, Gann testified that he was aware of a policy of Fruehauf to discharge employees who had been injured on the job. Our review of the record reveals that the jury could reasonably conclude that Gann's discharge was made in retaliation and not for the reason advanced by Fruehauf.

## III

Fruehauf next contends that the damages awarded by the jury were not substantiated by the evidence, and that the trial court erred in failing to grant Fruehauf's motions for J.N.O.V., New Trial, and/or Remittitur. In his instructions to the jury, the trial judge provided that:

> If ... you find by a preponderance of the evidence that Bill J. Gann is entitled to a verdict, in arriving at the amount of the award, you should include the amount of medical leave pay and fringe benefits to which Plaintiff Gann was entitled as a result of his employment with Defendant, Fruehauf Corporation, but for his discharge, and you may consider the following factors, if shown by a preponderance of the evidence, in determining additional damages, if any, to be awarded to the Plaintiff. Past, present and future emotional distress sustained by Plaintiff Gann, if any, as a result of his discharge.

After rendering a verdict in favor of Gann, the jury awarded Gann $112,500 in damages. Fruehauf argues that the damages awarded were unreasonable and excessive.

Under the court's instructions, the jury was allowed to award

10

not only medical leave pay and fringe benefits to which Gann was entitled, but could also consider past, present, and future emotional distress sustained by Gann as a result of his discharge. Apart from any leave pay and fringe benefit evidence, there was evidence that Gann suffered emotional distress due to the lost benefits, the termination itself, the losing of his home in Mississippi by foreclosure, and additional emotional distress by having to relocate with his wife and having to be supported by his mother. Accordingly, we reject Fruehauf's arguments that the jury's decision is not supported by the evidence and is unreasonable and excessive. We also reject Fruehauf's argument that he is entitled to a J.N.O.V., New Trial, and/or Remittitur as without merit.

IV

Fruehauf next argues that the district court erred in imposing a sanction of $2,385.40 upon Fruehauf's counsel for submitting a second Motion for Partial Summary Judgment in violation of Rule 11. The record reveals that the district court had denied Fruehauf's first Motion for Partial Summary Judgment as to the retaliatory discharge claim in 1990. This claim was based solely on Fruehauf's argument that Mississippi law applied and precluded an action for retaliatory discharge based on the Mississippi employment-at-will doctrine. In 1993, Fruehauf filed a second Motion for Partial Summary Judgment seeking a dismissal of the claim on the basis of Washington law, with Gann's poor performance as the legitimate reason for his termination. Such

11

motion was supported by proper affidavit. Nonetheless, the order sanctioning Fruehauf for this second motion provides in pertinent part as follows:

> This same argument was presented to the Court by Fruehauf's earlier Motion for Partial Summary Judgment. The Court denied that Motion by its Order dated March 9, 1990. Fruehauf's present Motion has been filed unnecessarily for the purposes of harassing Plaintiff and needlessly increasing the cost of litigation.

It is clear that the trial court sanctioned Fruehauf based upon an erroneous conclusion that the argument presented in his latter summary judgment motion was the same as that presented in his first motion for summary judgment with respect to the wrongful termination cause of action. Accordingly, we find that the district court abused its discretion in sanctioning Fruehauf's counsel and thereby set aside its sanction.[5]

Gann's Appeal With Respect To The Retaliatory Discharge Claim

V

Gann claims that the district court erred in not providing reinstatement or a similar remedy and attorney's fees to Gann after he prevailed in the jury trial. Gann argues that Washington law authorizes the district court to award the prevailing plaintiff "all appropriate relief" including reinstatement with back pay and attorney's fees. Further, according to Gann, another Washington statute, RCW 49.48.030, provides for attorney's fees in regards to claims for back wages.

---

[5]The district court's order of sanction also contained an argument that was contained in Fruehauf's answer, but which was not discussed in the motion for summary judgment for which Fruehauf's counsel was sanctioned.

12

RCW 51.48.025, however, only states that the court has *jurisdiction* to order such relief, not that it *must* order such relief. Thus, Gann has not stated a claim here, as he has not indicated how the district court abused its discretion.

Gann also argues that the district court erred in not sanctioning Fruehauf for filing a counterclaim against Gann for the purposes of harassment in violation of Rule 11. In support of his arguments, Gann points to the fact that Fruehauf dismissed its counterclaim for damages shortly before trial. Gann has failed to show an abuse of discretion in the trial court's failure to impose sanctions.

## Gann's Other Appeals

### BACKGROUND

On the same day that Gann was terminated, Fruehauf informed him that his coverage under the employee benefit plan sponsored by Fruehauf and administered by Connecticut General would cease on November 30, 1988, and that he would be eligible under COBRA to continue his group medical coverage for up to eighteen months if he paid certain premiums. On January 30, 1989, Gann elected to have such coverage, but on March 20, 1989, Mongoose, the administrator of the continuation coverage, terminated the coverage because of Gann's alleged nonpayment of premiums. Gann had also filed with Fruehauf on November 30, 1988 a claim for certain disability benefits. However, when Gann refused to submit to an independent medical examination, Connecticut General denied the claim.

13

In his complaint, Gann brought forth seven causes of action.[6] The district court entered summary judgment against Gann on all his claims. Although Gann asserts that he is appealing the rulings on all his claims, he only presents arguments on his claims that Fruehauf, Connecticut General, Goralski, Szemborski, and Robinson did not pay Gann disability benefits in violation of § 1132(a)(1)(B);[7] and Fruehauf, Goralski, and Mongoose terminated

_____

[6]The claims brought forth by Gann are as follows:

> (1) Goralski did not supply Gann with a requested copy of an insurance policy in violation of 29 U.S.C. §§ 1132(a)(1)(A) and 1132(c).

> (2) Fruehauf, Connecticut General, Goralski, Szemborski, and Robinson did not pay Gann disability benefits in violation of § 1132(a)(1)(B).

> (3) Fruehauf, Connecticut General, Goralski, Szemborski, and Robinson breached their duties as fiduciaries under the employee benefit plan.

> (4) Fruehauf, Connecticut General, Goralski, Szemborski, and Robinson failed to provide Gann an individual statement setting forth the information to be contained in a registration statement required by 26 U.S.C. § 6057(a)(2) and 29 U.S.C. § 1132(a)(4).

> (5) Fruehauf, Goralski, and Mongoose terminated Gann's continuation coverage in violation of COBRA.

> (6) Connecticut General engaged in unfair and deceptive trade practices in the business of insurance in violation of Miss.Code Ann. § 83-5-29.

> (7) Fruehauf willfully, intentionally, and in bad faith tortiously interfered with the contractual rights of Gann.

[7]§ 1132(a)(1)(B) provides: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...."

14

Gann's continuation coverage in violation of COBRA. Because he has not advanced arguments in the body of his brief in support of his appeal of his other claims, Gann has waived or abandoned these claims. *Yohey v. Collins,* 985 F.2d 222, 224 (5th Cir.1993).

Appellate courts review summary judgments *de novo,* applying the same standard as the district court. *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 956 (5th Cir.1993). Summary judgment shall be rendered if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986).

VI

The district court held that one of the reasons why a refusal to pay the benefits was justified was because Gann was not under the care of a licensed physician at the time his claim was pending. The Certificate of Insurance states that "[n]o Monthly Benefits will be paid for a period of Total Disability when you are not under care of a licensed physician." Gann has not responded to this argument in this appeal. Although Gann has been under the care of a chiropractor, chiropractors are not licensed to practice

---

"A denial of ERISA benefits by a plan administrator challenged under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), is reviewed by the courts under a *de novo* standard unless the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' " *Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1305 (5th Cir.1994).

15

medicine, and do not qualify according to the words of the certificate. We thus affirm the trial court's summary judgment on the disability benefits claim on this basis, and do not need to reach Gann's other arguments with respect to such claim.

VII

Gann alleged in his complaint that Fruehauf, Goralski, and Mongoose wrongfully terminated his continuation of coverage in violation of COBRA, and appeals the district court's entrance of summary judgment against Gann. The district court entered summary judgment because it found that Gann owed one month's premium for February 1989. We agree.

The due date for premiums was the first day of each month of coverage. But 29 U.S.C. § 1162(2)(C) provides that a plan cannot require the payment of any premium before forty-five days after the day on which the beneficiary elected to have continuation coverage. Gann elected to have coverage on January 30, 1989. Under § 1162(2)(C), the premiums due February 1 were not required to be paid until March 17. The summary judgment evidence presented on behalf of Fruehauf establishes that the February payment was not made by Gann by March 17. Gann's summary judgment evidence on this point was unable to specifically set out that his February payment was made on or before March 17. Because no material issue of fact was raised by the summary judgment proof, the district court correctly found that Gann was not entitled to his cause of action

16

alleging a wrongful termination of his continuance of coverage.[8]

                                    VIII

Gann argues that the district court erred in not allowing him to supplement the record.  After the district court issued its order dismissing Gann's various claims on summary judgment, Gann moved to supplement the record.  Gann argues that the submitted evidence would have raised genuine issues of material fact.  The lower court, however, disagreed and denied the motion.

Gann argues that the evidence that he wishes to add as supplements is not new, but rather corroborates his arguments that summary judgment is inappropriate.  But Gann does not specify or describe the evidence or how the district court abused its discretion.  Under such circumstances, no abuse of discretion is shown.  Moreover, as Gann describes the evidence as not new

---

[8]Gann also argues that a grace period in his continuation coverage provided that a period of thirty-one days will be granted as a grace period for the payment of premiums after the initial premium.  The grace period provision states:

> GRACE PERIOD.  If, before a Premium Due Date, the Policyholder has not given written notice to the Insurance Company that the policy is to be cancelled, a Grace Period of 31 days will be granted for the payment of each premium after the initial premium.  The policy will stay in effect during that time.

Thus, according to Gann, because March 17 was the due date for the February premium, which was not the initial premium, the grace period extends the deadline thirty-one days past March 17.

We disagree.  The statutory extension to March 17 is an extension for the *payment* of the premiums and not an extension of the *due date* of the premiums, which remains the first day of each month.  Thus, the grace period of the coverage operates thirty-one days from the due date, the first day of each month.

evidence, but corroborative of his arguments, no harm is shown.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is AFFIRMED, except as to the award of sanctions against Fruehauf's counsel, which is REVERSED.