# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2019

Lyle W. Cayce
Clerk

No. 18-60520

JOHN HARVEY,

  Plaintiff - Counter Defendant - Appellant Cross-Appellee

v.

CAESARS ENTERTAINMENT OPERATING COMPANY,
INCORPORATED; JAZZ CASINO COMPANY, L.L.C., doing business as
Harrah's New Orleans, a Louisiana L.L.C.,

  Defendants - Appellees

ROBINSON PROPERTY GROUP CORPORATION, doing business as
Horseshoe Tunica,

  Defendant - Counter Claimant - Appellee Cross-Appellant

---

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 2:11-CV-194

---

Before JOLLY, HO, and ENGELHARDT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:*

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 18-60520

This appeal arrives in our court following several visits by John Harvey to Caesars Entertainment affiliated casinos in Louisiana and Mississippi. During those visits, Harvey issued markers[1] to the casinos, indicating that he had sufficient funds in his bank account to cover his gambling debts. After Harvey failed to satisfy the markers, the Orleans Parish District Attorney's office prosecuted Harvey under Louisiana's worthless check statute. And Harvey filed this suit against seventeen different entities associated with Caesars Entertainment.[2]     One of the casinos, Horseshoe Tunica, counterclaimed for breach of contract.

The district court granted summary judgment in favor of the casinos on Harvey's claims as well as Horseshoe Tunica's counterclaims. It also awarded Horseshoe Tunica prejudgment interest and stated that Horseshoe Tunica would be awarded attorney's fees. Several years and various proceedings later, the district court docketed a document titled "Final Judgment," which ultimately awarded Horseshoe Tunica no attorney's fees. That same day, the district court denied a motion filed by Harvey to compel enforcement of an alleged settlement agreement between the parties. Harvey now appeals the dismissal of several of his claims, the district court's calculation of prejudgment interest, and the district court's rejection of his motion to compel enforcement

---

[1] As the district court noted, "[a] marker is a term used in the casino industry describing a type of negotiable check signed by the maker and on which is the name of the bank at which the maker has an account, usually with the account information, and the understanding is that the 'marker' can be cashed at the maker's described bank as a personal check could be."

[2] The district court dismissed thirteen of these entities from this action after Harvey conceded that they played no role in the events giving rise to his claims. The four remaining defendants were: Jazz Casino Company, LLC, the owner of Harrah's; Robinson Property Group, the owner of Horseshoe Tunica; Horseshoe Entertainment, LP, the owner of Horseshoe Bossier City; and Caesars Entertainment Operating Company, Inc., the parent company of at least Jazz Casino Company. Harvey has not pursued an appeal against Horseshoe Entertainment, LP. For ease of reference, we refer to the remaining defendants by the names of the casinos they are associated with.

No. 18-60520

of the supposed settlement agreement.  Horseshoe Tunica cross appeals the district court's decision to award $0.00 in attorney's fees.  We affirm in toto the district court's dismissal of Harvey's claims.  With respect to the district court's denial of attorney's fees, we affirm in part, reverse in part, and remand.

I.

In April 2011, Harvey gambled at the Horseshoe Casino in Bossier City, Louisiana, and losing, executed markers in the amount of $500,000.  The next month, he executed markers worth $1,500,000 at Harrah's in New Orleans. Several days later, Harvey executed another $1,000,000 in markers at the Horseshoe Casino in Tunica, Mississippi.  As of June 30, Harvey had not paid on the markers, so on July 5, Harrah's placed its markers for collection. Horseshoe Bossier City placed its markers for collection on July 11.  Harvey stopped payment on both sets of markers.

In August, Harvey and Scott Barber, the general manager of Horseshoe Tunica, entered into a payment arrangement for the markers owed all three casinos.  Under this arrangement, the $3,000,000 owed was to be paid off by the end of January.  Barber conditioned the arrangement on Harvey's agreement to only play at casinos owned by Caesars Entertainment.  Harvey made an initial payment of $150,000 to Horseshoe Tunica but then gambled at a Caesars competitor.  The casinos responded by informing Harvey that they considered him to have breached the agreement and by demanding payment in full.  Following Harvey's breach, Horseshoe Tunica deposited the remaining $850,000 in markers that Harvey owed it.  Harvey stopped payment on these markers as well.[3]

---

[3] As we will point out later, Harvey subsequently paid the $500,000 debt owed to Horseshoe Bossier City.

No. 18-60520

On September 2, Harrah's sent Harvey a letter, stating that if he did not satisfy the markers within ten days it would turn his case over to the Orleans Parish District Attorney's office for prosecution.  On September 8, Harrah's filled out a "Worthless Check Affidavit" with the District Attorney's office and signed an agreement to prosecute.  On September 28, a warrant was issued for Harvey's arrest.  After Harvey reached a restitution agreement with Harrah's to satisfy the $1,500,000 marker debt, the state court dismissed Harvey's criminal charges by *nolle prosequi*.[4]

## II.

Soon after Harrah's signed the agreement to prosecute, Harvey brought this suit, alleging various causes of action against the casinos.  Relevant to this appeal are Harvey's claims of malicious prosecution, false arrest, and abuse of process.[5]  Harvey also sought a declaration that both Louisiana and Mississippi's worthless check statutes were unconstitutional.  Horseshoe Tunica counterclaimed for breach of contract on the $850,000 in marker debt that Harvey owed it.  At the close of discovery, the parties filed a number of dispositive motions.  Our primary concern is with a motion for summary judgment filed by Caesars Entertainment, Horseshoe Tunica, Horseshoe

---

[4] The parties dispute the District Attorney's role in the restitution agreement. According to Harvey, the agreement required him to pay the District Attorney's office a $300,000 fee in addition to paying Harrah's the $1,500,000 in marker debt.  Harrah's disagrees, and contends that Harvey was not required to pay more than the face value of the markers.  Although it is unclear whether Harvey had to pay more than the $1,500,000 in marker debt, the record indicates that some portion of Harvey's payments went to the District Attorney's office.

[5] Harvey has also indicated that he is appealing his intentional and negligent infliction of emotional distress claims, by stating he "submitted sufficient evidence for intentional/negligent infliction of emotional distress, which materially dispute the factual basis for dismissal and merit consideration by a jury."  But Harvey has not pointed us to any legal authority that would support this assertion.  Thus, he has waived any argument that the district court erred in dismissing these claims.  *See James v. Woods*, 899 F.3d 404, 411 (5th Cir. 2018).

Bossier City, and Harrah's. Harvey responded to this motion by filing a forty-three page response as well as a thirty-one page memorandum brief.

Before ruling on the casinos' summary judgment motion, the district court struck Harvey's response, concluding that it violated the court's local rules on page limitations. The district court then proceeded to grant the casinos' motion for summary judgment on Harvey's claims. With respect to the breach of contract counterclaim, the district court granted summary judgment in favor of Horseshoe Tunica and indicated that it would award prejudgment interest at the rate of eight percent, as well as attorney's fees. Consistent with its memorandum opinion, the district court entered an order effectively disposing of all the claims brought in this case. The order did not, however, expressly state that the case was being dismissed.

The district court then invited Horseshoe Tunica to submit an application for attorney's fees. Horseshoe Tunica proceeded to do so, but the district court rejected the fee application three times. Each time the district court chastised Horseshoe Tunica for not partitioning its fees in a way that would allow it to determine whether they were expended solely for the benefit of Horseshoe Tunica. The district court ultimately awarded Horseshoe Tunica zero dollars in attorney's fees and costs of collection.

In the meantime, Harvey filed a motion to compel settlement, asserting that the parties had reached a settlement agreement sometime after the district court's summary judgment ruling. After Harvey filed the motion to compel and nearly three and a half years after its order on summary judgment, the district court docketed a document entitled final judgment. The district court then denied Harvey's motion to compel settlement for lack of jurisdiction. Harvey filed motions for reconsideration, which the district court denied. This appeal followed.

No. 18-60520

### III.

### A.

We first address whether the district court erred in striking Harvey's response to the casinos' summary judgment motion. We review the district court's interpretation and application of its local rules for abuse of discretion. *See Victor F. v. Pasadena Indep. Sch. Dist.*, 793 F.2d 633, 635 (5th Cir. 1986) (per curiam).

The district court's local rules provide that a "respondent's memorandum brief may not exceed thirty-five pages." N.D. Miss. L. U. Civ. R. 7(b)(5). Here, Harvey filed a forty-three page response to the casinos' summary judgment motion in addition to a thirty-one page brief. As the district court noted, this appears to have been done to circumvent the page limitations set forth in Local Rule 7(b)(5). Although Harvey points out that the Local Rule refers to memorandum briefs rather than responses, we find no error in the district court's application of the page limit requirement to Harvey's response. Additionally, although Harvey argues otherwise, nothing indicates that the district court failed to consider Harvey's summary judgment evidence. In its order, the district court stated that it would disregard Harvey's response, not his exhibits. Further, the district court later clarified that it did in fact consider Harvey's exhibits when ruling on summary judgment. Accordingly, the district court did not abuse its discretion in striking Harvey's response.

### B.

We turn next to the merits of the district court's summary judgment ruling. We review the district court's grant of summary judgment de novo, viewing all the facts and evidence in the light most favorable to the non-movant. *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Harvey takes issue with three aspects of the district court's summary judgment ruling. First, Harvey alleges that the district court erred by not conducting a choice-of-law analysis before assessing his malicious prosecution, abuse of process, and false arrest claims. Next, Harvey argues that a genuine dispute of material fact exists as to each of these claims. Finally, Harvey asserts that the district court erred by dismissing his constitutional challenge to Louisiana's worthless check statute. We address each argument in turn.

1.

The district court did not conduct a formal choice-of-law analysis on Harvey's malicious prosecution, false arrest, and abuse of process claims, but instead applied Louisiana law to these claims without comment. On appeal, Harvey argues that the district court should have applied Mississippi law.

A federal district court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *See Gann v. Fruehauf Corp.*, 52 F.3d 1320, 1324 (5th Cir. 1995). Here, the district court is located in Mississippi. Under Mississippi choice-of-law principles, the district court was not required to make a choice-of-law determination unless a true conflict exists between Mississippi and Louisiana law. *See Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006). Harvey argues that such a conflict exists, in that Mississippi and Louisiana law differ as to whether a defendant who uses the legal process to collect a debt abuses that process.

But, by failing to adequately raise this issue before the district court, Harvey has waived any argument that the two states' laws conflict. *See Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) ("Failure to raise

7

No. 18-60520

an argument before the district court waives that argument, including an argument for choice-of-law analysis."). In his brief in opposition to the casinos' summary judgment motion, Harvey made no mention of any conflict between Mississippi and Louisiana law regarding the torts of malicious prosecution, false arrest, and abuse of process. Instead, Harvey merely stated "[a]s the Court has not decided which state law to apply, Plaintiff has attempted to brief both Mississippi and Louisiana law." He then cited both Mississippi and Louisiana law with respect to his malicious prosecution and abuse of process claims and never explained why the district court should apply Mississippi law to his false arrest claim. This was insufficient to put the district court on notice that a potential conflict existed. Although Harvey did raise this issue in his Rule 59(e) motion, "[t]his court will typically not consider an issue or a new argument raised for the first time in a motion for reconsideration in the district court." *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014). Accordingly, Harvey waived this argument by not addressing it in his opposition to the casinos' summary judgment motion. Because of Harvey's waiver, we have no occasion to consider whether Mississippi law should have been applied to the malicious prosecution, false arrest, and abuse of process claims. And thus, we now proceed to consider those claims under Louisiana law.

2.

We begin by examining Harvey's claim for malicious prosecution. In Louisiana, a plaintiff bringing a malicious prosecution claim must establish:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant[s] in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to [the] plaintiff.

No. 18-60520

*Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984).

We focus on the element of probable cause. With respect to this element, "[t]he crucial determination is whether [the defendant] had an honest and reasonable belief in the guilt of [the plaintiff] at the time [the defendant] pressed charges." *Id.* at 1272. Our review of the record convinces us that the casinos had reason to believe Harvey violated the worthless check statute. The elements of a violation of Louisiana's worthless check statute are:

> (1) defendant issued, in exchange for anything of value, whether the exchange is contemporaneous or not; (2) a check, draft or order for the payment of money upon any bank or other depository; (3) knowing at the time of the issuing that the account on which drawn has insufficient funds with the financial institution on which the check is drawn to have the instrument paid in full on presentation; and (4) the instrument was issued with intent to defraud.

*State v. Davis*, 134 So. 3d 1257, 1263 (La. Ct. App. 2014).

Harvey asserts that at the time Harrah's contacted the District Attorney's office it had no evidence that he issued the markers with the intent to defraud or knowledge that his bank account had insufficient funds to pay the markers. The record indicates otherwise. Harvey initially executed these markers in the spring of 2011. He understood that if he did not pay on the markers within thirty days the casinos could deposit the markers with his bank. Understanding this fact, Harvey asked Harrah's to wait more than thirty days to deposit the markers. Then, once Harrah's deposited the markers, Harvey immediately stopped payment on them. On September 2, following the markers being returned to Harrah's for stopped payment, Harrah's sent Harvey a letter stating that if it did not receive full payment within ten days it would turn this case over to the Orleans Parish District Attorney's office for prosecution. As of September 8, the day Harrah's filled out the worthless check affidavit and entered into the agreement to prosecute,

No. 18-60520

Harvey had not satisfied the markers. Thus, at the time Harrah's contacted the District Attorney, Harrah's had sufficient reason to believe that from the beginning Harvey knew he did not have the funds to satisfy the markers and issued the markers with the intent to defraud.[6] It is easy to conclude that, as a matter of law, Harrah's had probable cause to press charges against Harvey, and the district court did not err in granting summary judgment in favor of the casinos on Harvey's malicious prosecution claim.[7]

3.

We now turn to Harvey's false arrest claim. The tort of false arrest, or false imprisonment, has the following elements: "(1) detention of the person; and (2) the unlawfulness of the detention." *Richard v. Richard*, 74 So. 3d 1156, 1159 (La. 2011). Although not formally an element, a claim of false arrest in Louisiana also requires that the underlying arrest was not supported by probable cause. *See Gibson v. State*, 758 So. 2d 782, 791 (La. 2000). We conclude that Harvey's false arrest claim fails as a matter of law. As stated, the record demonstrates that probable cause existed at the time Harrah's reported Harvey to the authorities. Additionally, under Louisiana law, a defendant is not liable for false arrest unless the arrest personally detained or restrained the plaintiff. *See Henderson v. Bailey Bark Materials*, 116 So. 3d 30, 39 (La. Ct. App. 2013) ("[The plaintiff] has not presented any evidence to support a claim of false imprisonment. He was not detained by anyone at

---

[6] Harrah's also argues that it had presumptive evidence of Harvey's intent to defraud because Harvey failed to make payment on the markers within ten days from the date of its letter demanding payment. *See* La. Rev. Stat. Ann. § 14:71(A)(2) ("The offender's failure to pay . . . within ten days after notice of its nonpayment [through written demand] shall be presumptive evidence of his intent to defraud."). Because we conclude that Harvey's other actions provided Harrah's with reason to believe that Harvey issued the markers with intent to defraud, we do not consider whether this presumption applies in this case.

[7] As such, we need not address whether Harvey established a genuine issue of material fact on the other elements of his malicious prosecution claim.

Bailey Bark.  He was arrested by the police based on warrants validly and lawfully obtained.").  Here, Harvey voluntarily surrendered after the District Attorney's office obtained a warrant for his arrest.  There is no evidence that Harvey was ever detained by anyone connected with the casinos.  Thus, the district court did not err in granting summary judgment on Harvey's false arrest claim.

4.

We now turn to Harvey's abuse of process claim.  "There are two essential elements of a cause of action for abuse of process: (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding."  *Guillory v. City of New Orleans*, 224 So. 3d 1035, 1042 (La. Ct. App. 2017).  Harvey's abuse of process claim fails on the first element.  As evidence of an ulterior purpose, Harvey contends that Harrah's reported him to the District Attorney so that Harrah's could collect a civil debt.  But Louisiana law does not consider the desire to collect a civil debt to be an ulterior motive for prosecution.  *See Vasseur v. Eunice Superette, Inc.*, 386 So. 2d 692, 696 (La. Ct. App. 1980) ("We know of no law which prohibits a holder of an NSF check from filing criminal worthless check charges against the issuer of the check merely because he has as his only objective payment of what is due from the defendant-debtor."); *see also Graham v. Foret*, 818 F.Supp. 175, 178 (E.D. La. 1992).  Harvey has alleged no other ulterior purpose that would support his abuse of process claim.  Thus, we affirm the district court's grant of summary judgment on Harvey's abuse of process claim.

5.

We next turn to Harvey's constitutional challenge to Louisiana's worthless check statute.  Harvey seeks a declaration that La. Rev. Stat. Ann. §§ 14:71 and 16:15 violate the Fourteenth and Eighth Amendments because they allow the district attorney to collect a twenty percent fee on debt collected

from violations of the worthless check statute.[8]  The district court concluded that Harvey lacked standing to bring this claim and that the claim failed on the merits.

To satisfy the "irreducible constitutional minimum of standing" Harvey "must demonstrate that (1) [he has] suffered an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized rather than conjectural or hypothetical, (2) there is a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court, and (3) the injury likely will be redressed by a favorable decision." *Seal v. McBee*, 898 F.3d 587, 590–91 (5th Cir. 2018) (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Moreover, to establish standing to seek declaratory relief, a plaintiff "must show that 'there is a real and immediate threat of repeated injury.'" *Id.* at 591. (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Harvey contends that he has standing to bring this claim because there is evidence that, as part of his restitution agreement with Harrah's, he paid the District Attorney's office a $300,000 fee, which is equal to the twenty percent collection fee that Louisiana's worthless check statute authorizes district attorneys to collect.  We see at least two problems with Harvey's

---

[8] Section 14:71 makes issuing worthless checks a crime for which successful prosecution can lead to imprisonment, the payment of a fine, or court ordered restitution. *See* La. Rev. Stat. Ann. § 14:71.  Section 16:15 provides: "A district attorney may collect a fee whenever his office collects and processes a check, draft, or order for the payment of money upon any bank or other depository . . . from any person who is a principal to [a worthless check offense]." La. Rev. Stat. Ann. § 16:15(A), (B).  For worthless checks with a face amount greater than five hundred dollars, such as those at issue here, the district attorney may collect a fee that equals up to twenty percent of the debt collected. La. Rev. Stat. Ann. § 16:15(C)(5).

argument.  First, even if we were to agree with Harvey that there is evidence that the District Attorney's office collected a $300,000 fee from him, it is undisputed that this fee would have been collected as a result of the restitution agreement between Harvey and Harrah's.  This independent agreement severed any causal connection between Harvey's alleged injury and application of the worthless check statute.  Second, because of the restitution agreement, the redressability requirement is not satisfied. Declaring Louisiana's worthless check statute unconstitutional, as Harvey requests, would not relieve him of his obligations under the restitution agreement that he voluntarily entered. Further, Harvey admits he has already satisfied all of the restitution agreement's requirements and points to no evidence that would suggest that he faces future prosecution under the worthless check statute.  Thus, such a declaration would provide no benefit to Harvey.

Accordingly, we affirm the district court's dismissal of Harvey's constitutional challenge to Louisiana's worthless check statute on standing grounds and decline to pass judgment on the constitutionality of that statute. Because standing is a jurisdictional prerequisite, we do, however, modify the dismissal to a dismissal without prejudice.  *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010) (noting that ordinarily dismissal for lack of jurisdiction should be without prejudice).

C.

We now examine whether the district court erred in calculating the prejudgment interest owed on Horseshoe Tunica's breach of contract counterclaim.  "State law governs the award of prejudgment interest in diversity cases." *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994).  "This court reviews the decision to award prejudgment interest, the interest rate selected, and other computations for abuse of discretion." *Perez v. Bruister*, 823 F.3d 250, 274 (5th Cir. 2016).

No. 18-60520

Harvey first asserts that the district court erred by calculating the eight percent interest rate on a compounded basis. Miss. Code Ann. § 75-17-7, which the district court cited, provides:

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

Miss. Code Ann. § 75-17-7. Because the second sentence of § 75-17-7 gives trial courts discretion to set the prejudgment interest rate, interest awarded under that provision may be calculated on a compounded basis. *See Williams v. Duckett*, 991 So. 2d 1165, 1183 (Miss. 2008). Harvey argues, however, that the first sentence of the statute governs the grant of prejudgment interest in this case because the judgment was founded on a contract between him and Horseshoe Tunica. He further contends that because the first sentence does not expressly authorize compound interest the prejudgment interest should have been calculated using a simple interest rate.

We do not read Mississippi caselaw as supporting Harvey's position. The Mississippi Supreme Court has indicated that the second sentence of § 75-17-7 applies to whether prejudgment interest should be awarded in contract cases where no rate of interest is specified. *See Tupelo Redev. Agency v. Abernathy*, 913 So. 2d 278, 286 (Miss. 2005). To be sure, that court later held that this provision's prohibition on awarding prejudgment interest from a date prior to the filing of the complaint does not apply to contract cases. *See Arcadia Farms P'ship v. Audubon Ins. Co.*, 77 So. 3d 100, 106–07 (Miss. 2012). But that opinion says nothing on whether the second sentence of § 75-17-7 gives trial courts the authority to set the prejudgment interest rate in contract cases where the contract does not provide the rate of interest. *See id.* As such, we

14

conclude that § 75-17-7 gave the district court authority to set the prejudgment interest rate, which means the district court had discretion to calculate that rate on a compounded basis.

Even if that were not the case, we still would find that the district court did not abuse its discretion by awarding Horseshoe Tunica prejudgment interest on a compounded basis. As Horseshoe Tunica notes, the district court was independently authorized to award it prejudgment interest under Miss. Code Ann. § 75-17-1(1).[9] *See Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 971 (Miss. 1999) (relying on both §§ 75-17-7 and 75-17-1(1) to assess whether prejudgment interest should be granted on contract claim where rate of interest not specified). And under § 75-17-1(1), interest may be compounded. *See Estate of Baxter v. Shaw Assocs., Inc.*, 797 So. 2d 396, 405–07 (Miss. Ct. App. 2001); *see also Stovall v. Ill. Cent. Gulf R.R. Co.*, 722 F.2d 190, 191–92 (5th Cir. 1984). Thus, it was within the district court's discretion to grant Horseshoe Tunica prejudgment interest on a compounded basis.

Harvey next argues that the district court should not have awarded prejudgment interest during the period between the district court's grant of summary judgment and its entry of final judgment. Instead, he contends that postjudgment interest should have been awarded from the date of the district court's order granting summary judgment. We disagree.

Although state law controls the determination of prejudgment interest, "[i]n diversity cases, federal law controls the award of postjudgment interest, including decisions about when postjudgment interest begins to accrue." *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 419 (5th Cir.

---

[9] Miss. Code Ann. § 75-17-1(1) provides: "[t]he legal rate of interest on all notes, accounts and contracts shall be eight percent (8%) per annum, calculated according to the actuarial method." Miss. Code Ann. § 75-17-1(1).

No. 18-60520

2017) (quoting *Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 615 (5th Cir. 2015)). Under 28 U.S.C. § 1961, postjudgment interest is calculated from "the date of the entry of the judgment." 28 U.S.C. § 1961(a). We look to the district court's intent, as well as its manifestation of that intent, to determine whether a particular document qualifies as a judgment. *See Heck v. Triche*, 775 F.3d 265, 277–78 (5th Cir. 2014); *Creaghe v. Albemarle Corp.*, 98 F. App'x 972, 974 (5th Cir. 2004).

Here, the record reflects that the district court did not intend the September 24, 2014 order granting summary judgment to be a judgment. Although the order effectively disposed of all the parties' claims, it did not, by its express terms, dismiss the suit. Moreover, after the district court entered the order, the parties filed several motions requesting that a final judgment be entered. The district court denied these motions. The district court then docketed a document styled "Final Judgment" on March 13, 2018, which dismissed Harvey's claims with prejudice and entered judgment against Harvey on Horseshoe Tunica's counterclaim. Based on the foregoing, it is apparent that the district court intended the March 13, 2018 "Final Judgment" and not the September 24, 2014 "Order" to serve as the judgment in this matter, and we find no error in the district court's award of prejudgment interest through its entry of that judgment.[10] Accordingly, we affirm the district court's calculation of the prejudgment interest owed Horseshoe Tunica.

D.

Harvey's final argument is that the district court erred by denying his motion to compel enforcement of the alleged settlement agreement. The district court concluded that it lacked jurisdiction over Harvey's motion

---

[10] We also note that Harvey has not cited, and we have not found, any Mississippi case that stands for the proposition that prejudgment interest stops running once a dispositive motion, such as a motion for summary judgment, has been ruled upon.

16

because its order granting summary judgment "had disposed of all claims." We review de novo a district court's interpretation of its own subject matter jurisdiction. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 327 (5th Cir. 2008).

We agree with the district court that, in general, once a case has been dismissed, a district court does not retain ancillary jurisdiction to enforce a settlement agreement unless the dismissal order expressly reserves jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–82 (1994). This case, however, had not been dismissed at the time Harvey filed his motion to compel. Harvey filed the motion to compel well after the district court granted summary judgment but before final judgment had been entered. As we have noted, the summary judgment order did not state that Harvey's claims had been dismissed or that this case had been closed. Not until March 13, 2018 did the district court dismiss Harvey's claims or enter judgment in favor of Horseshoe Tunica on its counterclaim. Under these circumstances, we conclude that the district court had jurisdiction to rule on the motion to compel. *See Bailey v. Potter*, 478 F.3d 409, 412 (D.C. Cir. 2007).[11]

Nonetheless, we are not convinced that the district court's denial of Harvey's motion constitutes reversible error. The only evidence of settlement comes from an email between attorneys which states: "We will accept the offer. We'll draft up a settlement agreement." This email does not indicate that a settlement agreement had been reached. Instead, it merely suggests that the

---

[11] It is of no moment that the district court, although entering the two orders on the same day, technically entered the final judgment before ruling on Harvey's motion to compel. Because Harvey filed the motion to compel enforcement of the settlement agreement while this case was pending before the district court, the district court had jurisdiction to rule on the motion. *Cf. Shaffer v. Veneman*, 325 F.3d 370, 374 (D.C. Cir. 2003) (distinguishing cases where parties sought to enforce settlement agreement prior to dismissal from those where parties sought enforcement after dismissal).

attorneys anticipated a settlement being agreed to in the future.  Subsequent emails between the attorneys further convince us that the parties had not settled.  In one email, Harvey's counsel provided "comments to the draft settlement agreement" in which he materially changed portions of a proposed settlement.  The remainder of the emails between the attorneys very much reflect active settlement negotiations rather than discussions between parties who had already settled.  Given the lack of evidence of an enforceable settlement, the district court did not err in denying Harvey's motion.

We thus conclude our discussion of the merits of Harvey's appeal and AFFIRM in toto the district court's judgment dismissing all of Harvey's claims. We now turn to the cross appeal of Horseshoe Tunica.

## IV.

In its cross appeal, Horseshoe Tunica argues that the district court improperly denied its motion for attorney's fees and costs.  As Mississippi law governed the contract between Harvey and Horseshoe Tunica, we again look to Mississippi law to determine whether Horseshoe Tunica should have been awarded attorney's fees.  *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  "[W]e review the district court's denial of attorney's fees for an abuse of discretion." *Wal-Mart Stores Inc., v. Qore, Inc.*, 647 F.3d 237, 242 (5th Cir. 2011).  In doing so, we review the district court's factual findings for clear error and legal conclusions de novo.  *See id.* at 242–43.

At the outset, we should make clear as to how the attorney's fees issue arises only as to Horseshoe Tunica and has no relevance as to the other defendants.  We remind the reader that Harvey initially sued seventeen different entities associated with Caesars Entertainment.  Harvey eventually conceded that thirteen of these defendants should be dismissed from this suit. However, the remaining four defendants, Harrah's, Horseshoe Tunica, Horseshoe Bossier City, and Caesars Entertainment, shared a commonality of

interest and thus have been represented by the same attorneys throughout this litigation. Under this arrangement, all attorney's fees and other litigation expenses incurred by the defendants were initially processed and paid by Caesars Entertainment. The defendants then allocated these fees and expenses to Horseshoe Tunica, ostensibly because the lawsuit was filed in Mississippi where Horseshoe Tunica is located.

Although the suit against the individual defendants shared a common basis, each defendant's individual situation with respect to Harvey differed. Harvey's failure to pay on the markers breached three separate agreements with Harrah's, Horseshoe Bossier City, and Horseshoe Tunica. After this litigation commenced, but before it was fully litigated, Harvey entered into a restitution agreement with Harrah's to satisfy the $1.5 million that he owed it. Additionally, at some point before the district court's summary judgment ruling, Harvey paid the debt ($500,000) he owed Horseshoe Bossier City. Thus, only Horseshoe Tunica filed a breach of contract counterclaim against Harvey.

Concluding that Harvey breached his agreement with Horseshoe Tunica, the district court held that the terms of a credit line application Harvey signed with Horseshoe Tunica required Harvey to pay Horseshoe Tunica's attorney's fees. By signing the credit line application, Harvey agreed to the following contractual term: "Should [Horseshoe Tunica] commence legal action against me to collect any money I may owe, I will pay [Horseshoe Tunica's] attorneys' fees and cost of collection." The district court interpreted this provision as allowing Horseshoe Tunica to recover the fees expended in prosecuting its counterclaim and in defending against Harvey's claims. The district court reasoned that Horseshoe Tunica's defense against Harvey's tort claims was "a considerable cost of collection." But the district court held that, even though all the defendants employed the same attorneys, this provision did not allow

No. 18-60520

for the recovery of attorney's fees and costs incurred by defendants other than Horseshoe Tunica.

With this background in mind, we proceed to focus on Horseshoe Tunica's argument that the district court erred in denying its motion for attorney's fees.  Under Mississippi law, attorney's fees "cannot be awarded absent a relevant contractual provision or statutory authority, or unless punitive damages are granted." *A & F Props., LLC v. Lake Caroline, Inc.,* 775 So. 2d 1276, 1282 (Miss. Ct. App. 2000).  Further, "[w]hen a party fails to present competent evidence to determine attorney's fees, the award may be denied." *See Romney v. Barbetta,* 881 So. 2d 958, 962 (Miss. Ct. App. 2004).

Here, the district court denied Horseshoe Tunica's initial $483,307.50 attorney's fee application because Horseshoe Tunica sought to recover the fees and costs incurred by all the defendants under the theory that Horseshoe Tunica incurred these costs when the other defendants allocated their expenses to Horseshoe Tunica.  Horseshoe Tunica then revised its attorney's fees application and requested $444,302 in attorney's fees, which it stated reflected work solely "related to (1) tasks that benefitted [Horseshoe Tunica] to the exclusion of any other [d]efendant or (2) tasks that benefitted [Horseshoe Tunica] as well as other [d]efendants, but were necessary to the success of [Horseshoe Tunica's] [c]ounterclaim and/or its defense of [Harvey's] claims." The district court again denied Horseshoe Tunica's motion, stating that it had identified at least thirty entries related to issues surrounding Harvey's criminal prosecution, which did not involve Horseshoe Tunica.  The district court also found it troubling that there was an "absence of . . . explanation as to why certain hours characterized almost identically as deducted hours were nonetheless included in the fee request."  Horseshoe Tunica again reduced the requested fee amount to $414,980.  In this fee application, Horseshoe Tunica noted that it could identify only $21,986 in fees that benefitted it alone but

20

believed it was also entitled to an additional $392,994 in fees because they represented "the costs and fees associated with the claims [Horseshoe Tunica] defended against and countered."  The district court denied this fee request with prejudice after it found Horseshoe Tunica had again requested "close to *all* of the fees and costs expended on behalf of *all* defendants" even though it had been "instructed otherwise by the court on two occasions."  (emphasis in original).

The district court did not abuse its discretion when it declined to award Horseshoe Tunica the full amount of fees and costs requested.  This case does not allow the court to presume a reasonable award.  *See Lane v. Lampkin*, 234 So. 3d 338, 351 (Miss. 2017); *but see Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So. 2d 977, 986 (Miss. 1992) (holding that under Open Account Statute court would "presume reasonable an attorney[']s[ ] fee of one-third of the judgment obtained").  Instead, Horseshoe Tunica was entitled to only those attorney's fees and costs provided for under its contract with Harvey.  *Romney*, 881 So. 2d at 962.  To be candid, we see nothing inequitable in declining to award attorney's fees when the party requesting the fees fails to show that the requested fees are allowed under the relevant contract.  *Cf. McDonald's Corp. v. Watson*, 69 F.3d 36, 45–46 (5th Cir. 1995) ("The district court abuses its discretion if it awards *contractually-authorized* attorneys' fees under circumstances that make the award inequitable or unreasonable or fails to award such fees in a situation where inequity will not result." (emphasis added)).

Here, the district court gave Horseshoe Tunica multiple opportunities to segregate the attorney's fees in a manner that would allow the court to determine which fees were expended on behalf of Horseshoe Tunica.  Still, the district court continued to find time entries for tasks unrelated to issues involving Horseshoe Tunica.  For example, when examining Horseshoe

No. 18-60520

Tunica's second fee application, the district court noted that it included time entries related to the Louisiana worthless check statute, even though Horseshoe Tunica, located in Mississippi, never sought Harvey's prosecution under Louisiana law.  Additionally, review of the time records submitted in support of Horseshoe Tunica's third and final fee application demonstrates that Horseshoe Tunica failed to describe much of the claimed work with enough particularity for the district court to determine whether the work was performed on behalf of Horseshoe Tunica.  Under similar circumstances, Mississippi courts have repeatedly found that the failure to adequately distinguish between reimbursable and non-reimbursable fees bars any award of attorney's fees.  *See, e.g.*, *Indus. & Mech. Contractors of Memphis, Inc. v. Tim Mote Plumbing, LLC,* 962 So. 2d 632, 639 (Miss. Ct. App. 2007); *Romney*, 881 So. 2d at 962; *A & F Props.*, 775 So. 2d at 1282–83.  Accordingly, we conclude that the district court did not abuse its discretion when it declined to award Horseshoe Tunica the $392,994 in attorney's fees as well as other litigation costs requested for the tasks that Horseshoe Tunica submitted benefitted it as well as the other defendants.

We do, however, find it necessary to remand the attorney's fees issue for the limited purpose of allowing the district court to consider whether Horseshoe Tunica provided sufficient evidence that it was entitled to the $21,986 in fees it identified as relating solely to tasks that benefitted it. Despite holding that the fee application allowed Horseshoe Tunica to recover its litigation costs, the district court erred in not specifically explaining why it failed to award Horseshoe Tunica this fee amount.  We reach this conclusion because in its final fee application Horseshoe Tunica specifically identified these fees as benefitting it and no one else.  Additionally, it segregated these fees by highlighting on the proffered invoices the billing entries for the expenses that fell within this category of fees.  Accordingly, we reverse the

portion of the district court's judgment that declined to award Horseshoe Tunica this fee amount.  On remand, we leave it within the sound discretion of the district court to determine whether Horseshoe Tunica's evidentiary submissions provide a rational basis to award this fee amount.

## V.

In sum, the district court did not err by striking Harvey's response to the casinos' motion for summary judgment, by granting summary judgment on Harvey's tort claims, or in calculating the prejudgment interest.  We also hold that the district court did not err in finding that Harvey lacked standing to challenge Louisiana's worthless check statute, nor in denying Harvey's motion to compel settlement.  We do hold, however, that the district court erred by not adequately explaining its failure to award Horseshoe Tunica the $21,986 in attorney's fees that Horseshoe Tunica identified as work that benefitted it alone.  Accordingly, the judgment of the district court is:

AFFIRMED as modified in part; REVERSED in part; and REMANDED.